The Matteawan Company *v.* Bentley.

---

## THE MATTEAWAN COMPANY *vs.* BENTLEY and others.

An action in the nature of trover, to recover the value of personal property, cannot be maintained against a party who has not been guilty of a conversion; who has never had possession of the property, and has had nothing to do with it, except that he has taken a mortgage upon it, to secure a debt, from a person claiming to be the owner.

A sale procured by fraud on the part of the purchaser is not absolutely void. The party defrauded may or may not avoid the sale, at his option. But if he designs to rescind the contract, he must do whatever may be necessary to restore the parties to the condition in which they were at the time of the sale, in respect to the thing sold and the consideration paid.

If he has received any thing under the contract he must restore, or offer to restore, it, before bringing suit. He cannot rescind in part and affirm as to the residue.

And where the notes of the purchaser have been received in part payment of the purchase money, it is not sufficient to produce them, at the trial, and offer to cancel them.

THIS was a motion by the defendants, Bentley and Jones, for a new trial upon a case.. The cause was tried at the Dutchess circuit, in December, 1851, before Justice Morse. The action was brought to recover the value of personal property alledged to have been fraudulently obtained from the plaintiffs, by the defendant Bentley, on or about December 22, 1849, at their manufactory at Matteawan, in Dutchess county. The property consisted of a lot of machinery mentioned and described in the complaint, made by the plaintiffs to order, upon the application of Bentley, in behalf of himself and the defendant Cutting, which they parted with only upon the strength of the written repre-

sentation made by Bentley at the time, as to the pecuniary responsibility of himself and Cutting, which representation the plaintiffs believed to be true. Bentley stated in his representation that he was worth $1000 and that Cutting was worth $3000, over and above all debts. The price of the machinery was $1283,37, of which sum the one-half was paid at the delivery, and a credit of nine and twelve months given for the balance, for which the two notes described in the complaint were given. After the delivery of the machinery to Bentley, it was removed to the town of Mohawk, in Montgomery county, and put up in buildings of the defendant Jones, which he had previously leased to B. & C. for manufacturing purposes. B. & C. failed, and stopped business, a few months after they had commenced, having incurred but very little additional liability in the mean time ; and on the 21st day of June, 1850, a short time after their failure, they executed to the defendant Jones a mortgage of this property, together with other property, to secure to him a *precedent* debt and liability. A few days after this mortgage was given, the plaintiff's agent, Josiah Carver, visited the place of business of the defendants and had an interview with the defendant Jones, respecting the failure of C. & B., and then fully apprised him of the fraudulent manner in which the property had been obtained from the plaintiffs, and demanded of him the property, or that he should secure the plaintiffs for the unpaid purchase money. He declined to do either. The copartnership of C. & B. who had been a short time associated together under the name of the " Fonda Bag Mill Company," was dissolved July 24, 1850, when Cutting assigned and transferred all his interest in the concern to Bentley, who thereupon assumed and agreed to pay all their debts and liabilities, and on the following day executed to Jones another mortgage of the same property embraced in the former mortgage, to secure him for the same and other indebtedness. In August, 1850, the plaintiffs made a farther demand of Jones for the property, when he refused to give it up, and upon such refusal this action was brought, claiming damages to the amount of $646,69, that being the balance of the purchase money of the property. The complaint set out the facts of the

The Matteawan Company v. Bentley.

case according to the code of procedure, alledging the fraudulent procurement of the property. Upon the trial the facts as set out in the complaint were established, and the jury found a verdict against the defendants Bentley and Jones, (the other defendant, Cutting, not having been served with process,) in favor of the plaintiff for $738,46, that being the balance of the unpaid purchase money with interest up to December 9, 1851, the time of rendering the verdict. Upon the trial the plaintiffs offered to deliver up the notes given by Bentley, to be cancelled.

*James Emott*, for the defendants.

*John J. Monell*, for the plaintiffs.

*By the Court*, BROWN, J. The plaintiffs' action is brought to recover the value of certain machinery sold to Cutting & Bentley, upon the ground that no title passed, in consequence of the fraudulent representations of the vendees as to their solvency, and ability to pay, at the time of the sale. The defendant Jones was not present at, or a party to, the sale, and has no connection with the property, except that six months after it was made he took a chattel mortgage upon the machinery, as security for a debt due from the defendants Cutting & Bentley. Assuming, for the moment, that the sale is void, to entitle the plaintiff to a verdict against Jones, it should appear at least that he was guilty of a conversion. A demand and refusal, before the commencement of the action, was proved at the trial; but it did not appear that the property had passed into his possession. On the contrary, the proof was quite clear that Bentley was in the actual possession and use of it from the time of the sale until some four months after the action was instituted. With these facts before him, the justice who held the circuit charged the jury, as matter of law, that Jones was entitled to a verdict, and directed them to find accordingly. They chose to disregard his direction and find a verdict against Bentley and him, both. For this cause alone the verdict should be set aside as to Jones.

There is however an insurmountable obstacle in the way of

retaining the verdict against either of the defendants. The false and fraudulent representations were established by the proof, and so the jury have found, by their verdict. And if the sale had been altogether on credit, and nothing whatever received on account of the consideration money, the right of the plaintiff to recover against the vendees would have been complete. The case however discloses the following facts. The price of the machinery was $1283,37, and the sale took place on the 24th of December, 1849. The purchasers paid one-half of the purchase money in cash, and for the other half they made and delivered to the plaintiff two promissory notes, one at nine and the other at twelve months, payable to the order of the plaintiff, at the Bank of the State of New-York. These notes the plaintiff got discounted at the bank, and appropriated to its own use the pro-'ceeds. The notes were not the property of the plaintiff, at the time the action was commenced, but they were then in the hands of the bank, where they remained until they reached maturity, and were protested for non-payment. When the plaintiff demanded the property from Jones, in August, 1850, no tender was made of the money received at the time of the sale, nor any offer made to restore the notes. The plaintiff proceeded upon the idea and asserted its right to affirm the contract of sale so far as to retain the money, and the proceeds of the two notes, and disaffirm it so far as to recover back the value of the property. This could not be done. The doctrine of rescission stands upon rational principles.

The expression sometimes used in the books, that when a sale is procured by fraud and misrepresentation no title passes to the vendee, must be taken with due qualification. The sale is not absolutely void, but only voidable at the option of the vendor. "There can be no doubt of the soundness of the principle that the vendee himself acquires no property in or title to the goods, and cannot retain them against the vendor, if he (the vendee) obtained them by a gross fraud practiced on the vendor under color of a purchase, whether on credit or otherwise." (*Chit. on Cont.* 406.) It is not competent to the person guilty of the fraud on the other party to the agreement to avoid the contract

on this ground.   The election is left solely to the party defrauded. The election on the part of the defrauded party to rescind the contract must be exercised as soon as the fraud is discovered. And if after the fraud practiced on him has come to his knowledge, he deals with the subject matter of the contract, he cannot repudiate the contract although he subsequently discovers further circumstances connected with the same fraud.   (*Id.* 680.) When a sale is procured by fraud, no title passes to the vendee. The vendor still retains the legal right in the goods, unless, after discovering the fraud, he assents to and ratifies the act of sale positively, or by such delay in reclaiming the goods as would authorize a jury to infer assent.   (*Ash* v. *Putnam.* 1 *Hill*, 302.) A sale, therefore, under circumstances of fraud, is not absolutely void.   The party defrauded may or may not avoid the sale, at his option.   If he designs to rescind the contract, he must do whatever may be necessary to restore the parties to the condition in which they were at the time of the sale, in respect to the thing sold and the consideration paid.   If he has received any thing under the contract he must restore or offer to restore it; for he cannot rescind in part and affirm as to the residue. (*Voorhees and others* v. *Earl & Kellogg*, 2 *Hill*, 288.)   The party who would disaffirm a fraudulent contract must return whatever he has received upon it.   This is on a plain and just principle.   He cannot hold on to such part of the contract as may be desirable on his part, and avoid the residue, but must rescind in toto if at all.   (*Masson* v. *Bovet*, 1 *Denio*, 74.) Thus in *Baker* v. *Robbins*, (2 *Denio*, 138,) it was held that if the plaintiff had been defrauded in regard to the notes, he had an undoubted right to avoid his agreement to receive them in part payment.   But in order to do this, he was bound to return, or offer to return, what he had received on the contract; and until this was done the agreement upon which the notes were transferred remained in full force.   The contract, although fraudulent, was not *ipso facto* void; it was only voidable by a prompt return of what was received under it.   At the trial the plaintiff produced and offered to cancel the notes.   But this came far short of such a rescission of the contract as entitled it

to a restoration of the property. The action is in tort to recover its value, upon the ground that it was the property of the plaintiff and not the property of the defendants. It must be determined upon the same principles as if the proceeding was *in rem* to recover the property itself. · The plaintiff was bound to establish his right to it at the time the action was commenced, and this could not be done, upon the authority of the cases cited, without proving an offer to restore all it had received under the contract. This was not done; for there was no offer to restore the money, and the notes were the property of the Bank of the State of New-York.

The court, I think, should have instructed the jury, as requested by the defendants' counsel, that without the offer to restore what had been received there could be no recovery against the defendants.

There should be a new trial, with costs to abide the event.

[DUTCHESS GENERAL TERM, October 4, 1852. *Barculo, Brown* and *S. B. Strong,* Justices.]