32 171
92h 264

STEVENS and others *vs.* HYDE and others.

Where a vendor asks to have the contract of sale rescinded, on the ground of fraud, it is sufficient for him to produce and cancel upon the trial, the notes given for the purchase money.

If since the purchase, the purchaser has assigned all his property to trustees in trust for the benefit of creditors, and the assignees are in possession of the property, a tender of the money or property received by the vendor, upon the sale, may properly be made to the assignees, instead of the purchaser.

The rule that where property has been taken *tortiously* or *feloniously* no title passes, and the owner is entitled to reclaim the property wherever it can be found, does not apply to a case where the possession has been acquired by purchase and delivery.

When there is a contract of sale and an actual delivery pursuant to it, a title to the property passes, but the sale is voidable and defeasible, as between vendor and vendee, at the election of the vendor, if obtained by false and fraudulent representations. And the vendor can reclaim his property, as against the vendee, or any person but a bona fide purchaser without notice of the fraud, upon a prompt return of whatever has been paid upon the contract.

An election by the vendor, to rescind, when distinctly and definitely made, cancels and puts an end to the contract, *in toto*, and restores the vendor to his original title as general owner of the property, and leaves the parties in their original position in respect to the title.

If nothing has been received by the vendor, towards the purchase money, notice of his election to rescind the contract, with a demand of the property, will entitle him to reclaim it of any person who may have it in his possession.

If any thing has been paid by the purchaser the vendor must restore it, or offer to restore it, before he can claim to have the contract of sale rescinded; and he must keep his tender good.

MOTION to set aside a nonsuit, and for a new trial, upon a case; which motion was ordered to be heard in the first instance at a general term. The action was for the delivery of personal property, on the ground of fraud in the purchase. The defendants claimed to hold the property as assignees under an assignment made by John S. Joslin, in trust for the benefit of creditors. The complaint alleged a demand of the defendants on the 13th of November, 1857, a refusal by both to deliver possession, and a wrongful detention by both. The defendants answered separately, claiming

title to the goods under the assignment, and denying the plaintiff's title, &c. and the defendant, Stoddard, also denying the demand and refusal, &c. The property consisted of a stock of hardware worth over $16,000, purchased of the plaintiffs by Joslin, in February, 1857, at Rochester. The purchase was on credit, and the purchase money was secured by the individual notes of the purchaser, for about $2300 each, and payable at 3, 6, 9, 12, 15, 18 and 21 months, and the property was delivered to Joslin. The first note was paid at maturity, in cash; the second note was also paid at maturity, partly in cash and the residue in notes, accepted by the plaintiffs. In the latter part of October, 1857, and before the third note matured, Joslin was at Rochester, and notified the plaintiffs in person that he could not meet the paper maturing; and an effort was made to settle the matter, which proving unsuccessful he returned to Utica, and on the 2d day of November, 1857, assigned all his property, including the goods in question, to the defendants, in trust for the benefit of his creditors; the defendants at once taking possession and entering upon the duties of their trust. On or about the 13th of November, 1857, the plaintiffs tendered to the defendant Hyde, one of the assignees, the five purchase money notes not then matured, a portion of the notes received in payment of the second note, and $3534.41 in money, and demanded the goods. No tender or offer to return the notes or money was made to Joslin, or to Stoddard, nor was any demand made of Stoddard, the other defendant. On the trial at the Monroe circuit, in April, 1859, the plaintiffs brought into court the five unpaid notes for the purchase money, and a portion of the paper received in payment of the second note, to be given up, (the balance of the notes so received in payment having been collected by them after the tender,) but declined to bring in any of the money; the defendants offering to accept the notes and money tendered to Hyde, and to relinquish all claim to the goods, which the plaintiffs refused. It also appeared on the trial, that the plaintiffs,

after notice of the assignment, waived protest on one of the notes received in payment, and otherwise treated the paper as their own.

At the close of the testimony the defendants moved for a nonsuit, on various grounds. His honor, the circuit judge, without expressing any opinion upon the other points, held and decided that the tender of rescission should have been made to Joslin; "the contract was made with him, and should have been rescinded between the plaintiff and him; the tender of the notes to Hyde left the contract with Joslin still in force." He accordingly granted the nonsuit, and judgment for a return, or the value of the property, &c.

*S. Mathews* and *F. L. Durand,* for the plaintiff.

*H. R. Selden,* for the defendants.

*By the Court,* E. DARWIN SMITH, J. Upon the ground on which the nonsuit in this action was put, at the circuit, I think it cannot be sustained. Assuming that the plaintiffs had sufficiently established the fraudulent representations alleged in their complaint, to entitle them to recover, to go to the jury upon that question, it was error, I think, to hold that they had not made a sufficient tender before suit brought, to entitle them to rescind the sale and maintain the action. So far as related to the notes of Joslin, received on the purchase, it was sufficient to produce and cancel them on the trial. (22 *Pick.* 18. 1 *Metc.* 558. 3 *Sandf.* 589. 1 *id.* 560.) The rescission of the contract of sale necessarily canceled the notes, if they had not been negotiated by the plaintiff. (*Thurston* v. *Blanchard,* 22 *Pick.* 20.) But the goods being in the possession of Hyde, at Rochester, who was about to sell them under a general assignment made by Joslin, the tender, we think, might properly be made to him as one of the assignees. Joslin lived at Utica, and by the assignment he had parted with the control, as he had also with the pos-

session of, and all interest in the goods. The assignees held the goods for the creditors, and if the plaintiffs were bound to restore any thing upon the rescission of the contract of sale, the property to be restored belonged to the creditors, and might rightly be paid to and held by the assignees as a substitute for the goods. A demand of the goods of Joslin in person, at Utica, would have been entirely idle, for he had not the property in possession to enable him to comply with such demand; and a tender to him would have been an equally idle formality, for the plaintiff could not be required to restore to him in fact what they had received towards the purchase, without, at the same time, receiving back the unsold portion of the goods. If a tender to Joslin in person was essential to entitle the plaintiff to rescind the sale and redeliver the goods in the hands of the assignees, or to maintain an action therefor, the rights of vendees in all such cases could be very easily and entirely defeated by the absconding of a fraudulent vendee after an assignment of the property, or by his keeping out of the way till they could sell the property to bona fide purchasers. By the tender to Hyde, the plaintiffs did all that was in their power to do, of any practicable consequence, to make full restitution of all the benefits or considerations received on the purchase, so as to entitle them to rescind the contract of sale.

But it is now claimed by the counsel for the plaintiffs that such tender was unnecessary, and that it was only made for greater caution; that the goods for which this action was brought having been obtained by fraud, the title never passed, and they were entitled to reclaim them wherever they could find them. Such is undoubtedly the rule in respect to property *tortiously or feloniously* taken. In such cases no title can be acquired or imparted. But I think this rule does not apply to cases where the possession of property has been acquired by purchase and delivery. We are cited to quite a number of cases which seem to assert a contrary rule, and there is a great degree of looseness of expression and careless-

Stevens *v.* Hyde.

ness of statement in laying down the rules applicable to cases of fraudulent sales. In *Ash* v. *Putnam*, (1 *Hill*, 303,) Judge Cowen states the rule as follows : "When a sale is procured by fraud, no title passes to the vendee ; the vendor still retains his right in the goods, unless, after discovering the fraud, he assented to and ratified the act of sale positively, or by such delay in reclaiming the goods as would authorize a jury to infer assent ;" and cites *Root* v. *French*, (13 *Wend.* 570.)

In *Cary* v. *Hotailing*, (1 *Hill*, 311,) and *Olmstead* v. *Hotailing*, (*Id.* 317,) the same doctrine is reasserted. In these cases in Hill, Judge Cowen holds that a sale procured by fraud does not divest the title or possession, so as to deprive the vendor of the right to bring *trespass*. In the case of *Ash* v. *Putnam*, he held that trespass lay against the sheriff who had levied on such property on execution against the fraudulent vendee. In *Cary* v. *Hotailing*, he held that replevin in the cepit lay, and also in the case of *Olmstead* v. *Hotailing*. In *Masson* v. *Bovet*, (1 *Denio*, 73,) Judge Beardsley says : "Fraud destroys the contract *ab initio*, and the fraudulent purchaser has no title ;" and cites *Chit. on Cont.* 406, 678 *and* 681, *Am. ed.* This same reference to Chitty I find in many other cases. There is running through the cases, quite generally, such expressions as that used in the text in *Chitty*, 678. "Fraud avoids a contract *ab initio*, both at law and in equity." "Fraud would vitiate and avoid the sale." (3 *John.* 237.) "Fraud vitiates all contracts." "Fraud invalidates every transaction, as well in· law as in equity." (1 *Chip.* 63.) "It avoids a contract *ab initio*, even when a credit was stipulated for and given." (9 *Barn. & Cress.* 59.) These expressions are all well enough, and are true, rightly understood. But they are obviously not unqualifiedly true. They embrace as much truth as can be compressed into so few words, but they show the insufficiency of human language to express in short aphorisms all of truth. These expressions are simply relatively true. Fraud does vitiate *ab initio* all contracts, at the instance and election of

the party defrauded, so far that the contract cannot be set up or urged against him. A contract tainted with fraud as to the party injured, is as no contract, but as against the party committing the fraud and all other persons, it is universally held a valid contract. It may perhaps be said of every contract infected by fraud, as of contracts infected with usury, that it is a *voidable* contract, but not a *void* one. This distinction between *void* and *voidable* contracts is well stated by Chief Justice Spencer, in *Anderson* v. *Roberts*, (18 *John*. 515.) He says: "No deed can be pronounced in a legal sense utterly *void* which is valid as to some persons, but may be avoided at the election of others. In *Lilly's Abr.* 807, and in *Bacon's Abr. title "Void and Voidable*," we have the true distinction. "A thing is void which is done against law at the very time of doing it, and when no person is bound by the act; but a thing is *voidable* which is done by a person who ought not to have done it, but who nevertheless cannot avoid it himself after it is done." Another test of a *void* act or deed is that every stranger may take advantage of it, but not of a *voidable* one." (2 *Leon*. 218. *Viner*, title *Void and Voidable, pl.* 4.) It would scarcely be pretended, I think, that a contract of sale infected by fraud was not binding upon the fraudulent party thereto, or could be avoided by a stranger. (*See Chitty on Cont. p.* 680, *and cases there cited.*) Such contracts in fact are *voidable*, not *void*. The true rule in respect to fraudulent sales is well stated by Chief Justice Shaw, in *Bowley* v. *Bigelow*, (12 *Pick*. 312.) Speaking of such a contract he says: "This contract and delivery were sufficient in law to vest the property and make a good title, if not tainted with fraud. But being tainted with fraud between the immediate parties to the sale, was *voidable*, and the vendors might avoid it and reclaim the property. But it depended upon them to avoid it or not, at their election." He says also: "We take the rule to be well settled, that when there is a contract of sale and an actual delivery pursuant to it, a title to the property passes, but

*voidable* and *defeasible* as between vendor and vendee, if obtained by false and fraudulent representations. The vendor can reclaim his property as against the vendee or any person but a bona fide purchaser, without notice of the fraud." In 4 *Paige,* 537, Chancellor Walworth states the rule to the same effect, and very much in the same language; and in the case of *Masson* v. *Bovet,* (1 *Denio,* 74,) Judge Beardsley says: "If the party defrauded in such case would disaffirm the contract, he must do so at the earliest practicable moment after discovering the cheat;" and in *Baker* v. *Robbins,* (2 *Denio,* 138,) the same learned judge says, speaking of a fraudulent sale: "The contract, although fraudulent, is not, *ipso facto, void;* it was only *voidable* by a prompt return of whatever had been received upon it." Such also is the language of Judge Brown, in *The Matteawan Co.* v. *Bentley,* (13 *Barb.* 645.) If the contract of sale in such cases is not absolutely *void,* but merely *voidable* at the election of the vendor, the contract must be valid until it is *avoided* by the vendor, and the title must necessarily pass. The vendee must possess the naked, legal title, but defeasible or revocable at the election of the vendor. In *Anderson* v. *Roberts,* (18 *John.* 515,) it was held by the court of errors that under a fraudulent deed the title passed to the grantee; and in *Somers* v. *Brewer,* (2 *Pick.* 184,) where a grantee obtained a deed of land by fraud and imposition upon the grantor, without consideration, it was held that the title passed. The analogy is complete between land and chattels. In one case the title passes by *deed,* and in the other by *delivery,* in pursuance of a written or an oral contract. In *Mowrey* v. *Walsh,* (8 *Cowen,* 238,) and in numerous other cases, it is held, and I think it is universally considered now as settled law, that a bona fide purchaser from a fraudulent vendee who has acquired possession by the consent or voluntary act of the vendor, gets a good title. (18 *John.* 515. 4 *Kent,* 464. 2 *Pick.* 184, *and* 12 *id.* 307. *Saltus* v. *Everett,* (20 *Wend.* 275.) In *Ash* v. *Putnam,* (1 *Hill, supra,*) Judge Cowen questions the pro-

priety of the decision in *Mowrey* v. *Walsh*, suggesting that it is an exception to the general rule that a person who has no title can convey none. He says: "*Mowrey* v. *Walsh* is an *anomaly*, for there is no general principle in the law that the equity of a bona fide purchaser from one destitute of title, shall overrule the prior legal right of the owner." The whole error in the learned judge, consists in assuming that the fraudulent grantee has no title. If he had been content to follow the old supreme court in the case of *McCarty* v. *Vickery*, (12 *John.* 348,) he would have found no difficulty. In that case it was held, in the case of a fraudulent sale of chattels, that "by delivery the property was changed, and *trespass* could not be maintained." The simple doctrine of this case makes all clear and simple. A fraudulent vendee of chattels, when there is an absolute and unqualified delivery with intent to transfer the property, like the fraudulent grantee of lands, acquires the title—a *naked, voidable, defeasible* title—which, on a sale by him to an innocent purchaser, passes. I agree that the cases of *Mowrey* v. *Walsh* and *Saltus* v. *Everett*, and other cases sustaining the title of the bona fide purchaser from the fraudulent vendee, rests upon no principle, if the fraudulent vendee acquires no title, and his possesion is *tortious*. If he has no title it is a solecism in the law to say that he can convey one. It is repugnant to that sound maxim "that no one can convey to another a better title than he has himself." This is the very difficulty with property acquired *tortiously* or *feloniously*. No title can be imparted, in such cases, because the party has none to convey. But with property acquired under a contract of sale when the *delivery* is unconditional, or by a conveyance, the title passes and remains in the vendee, *voidable* at the election of the vendor, until parted with to a bona fide purchaser, subject of course to the qualification that the fraud may be waived, and will be deemed waived, if the right of election to rescind the contract is not promptly exercised, or within such period as to preclude the implication of con-

Stevens v. Hyde.

sent to the contract, after the discovery of the fraud. The doctrine of the cases of *Ash* v. *Putnam, Cary* v. *Hotailing, Olmstead* v. *Hotailing,* and *French* v. *Root,* that the general property remains in the vendor, after the sale, and that he may, without any demand or act of rescission, maintain trespass as for a tortious taking, where a sale has been made upon credit, and the property absolutely delivered, cannot, I think, be sustained. The rule of these cases doubtless does apply to cases of sales where the delivery is conditional. Where a sale is for cash, and no credit is given or intended, and *possession* is obtained by fraud, and without consent, or against the will of the vendor, the taking would doubtless be *tortious.* Such are the cases cited by Judge Savage, in *French* v. *Root,* (*supra,*) viz: *Allison* v. *Matthieu,* (3 *John.* 238 ;) *Van Cleef* v. *Fleet,* (15 *id.* 150,) and 1 *Barn. & Cress.* 514. Which last case is also cited in *Ash* v. *Putnam,* with *Kilby* v. *Wilson,* (*Ryan & Moody,* 178.) These, with the case of *French* v. *Root,* are the cases chiefly relied upon by Judge Cowen. These were all instances of sales for *cash,* where no credit was given or intended, and where possession was wrongfully obtained. The case of *Buffington* v. *Gerrish,* (15 *Mass. Rep.* 156,) also cited in *French* v. *Root,* was a case of the reclamation of property against the vendee ; and the only other case cited is *Mowrey* v. *Walsh,* where the opposite principle is really carried out and asserted. These cases obviously furnish no authority for the doctrine asserted in *Ash* v. *Putnam,* and the two following cases in 1 *Hill.* There was not, in these cases, any contract to rescind. No contract had been *consummated,* no delivery had been made with intent to pass the property and complete the sale; and without *delivery* no title passes upon a sale of chattels. (*Brower* v. *Peabody,* 3 *Kern.* 124.) The case of *Hunter* v. *The Hudson River Iron and Machine Co.* (20 *Barb.* 493,) contains expressions following the cases of *Ash* v. *Putnam, Cary* v. *Hotailing, Olmstead* v. *Hotailing,* and *French* v. *Root.* But that was a case between the original parties, calling for no

decision on this question, and the reference to these cases is without discussion. The learned judge also cites 13 *Barb.* 641, in which Judge Brown, although he refers to these cases for the general doctrine on the subject of fraudulent sales, obviously did so distrustfully of their soundness, for he says: "The expression, sometimes used in the books, that when a sale is procured by fraud and mispresentation no title to the vendee passes, must be taken with this qualification: The sale is not absolutely *void*, but only *voidable*, at the option of the vendor." In the general views of this case I entirely concur, and think it contains a sound and correct view of the law on the subject, with the single qualification that I think it a mistake to say that the general title to the property before rescission or avoidance of the contract, remains in the vendor. The case called for no decision of the question, and none was, I think, intended. The learned judge says also, in another part of the opinion: "The contract, although fraudulent, was not *ipso facto* void; it was only voidable by a prompt return of what was received under it. It was not void, if it was only *voidable* at the option of the party *defrauded.*" Until such avoidance, how can it be said that the title to property absolutely delivered in pursuance of it, does not pass? If the title does not pass at the time of the sale upon delivery, when does it pass? Does it remain forever in the vendor, or *in nubibus?* What definite act is essential to pass it afterwards? Will mere delay to rescind affirmatively pass the title, *per se?* At what precise moment thereafter is the title of the vendor divested? When can it be said, with certainty, that the one has *parted with*, and the other *acquired*, the title? It is far better to hold, I think, the general naked title passes by *delivery*, subject to the right of rescission and revocation, until the property is changed or transferred to an innocent holder. This is a simple rule and easy of application. If these views are correct, the plaintiff in this case had the election to rescind the contract of

sale and reclaim the property when they assumed the right to do so.   (4 *Paige*, 537.)

This election, when distinctly and definitely made, cancels the contract *in toto*, (if the plaintiff was right in his assumption of the fraud) and restores the plaintiff to his original title as general owner of the property.   It puts an entire and absolute end to the contract, to the same effect as if no contract had been made, and leaves the parties in their original position in respect to the title.   If nothing had been received by the plaintiff in this action towards the purchase of the goods in question, the case would be free from difficulty.   In such case notice of the election to rescind the contract and sale, with a demand of the property, would have entitled them to reclaim it of any person who might have it in possession; but he cannot reclaim it without such notice and demand.   In *Tallman* v. *Turck*, (26 *Barb.* 167,) it was held that replevin lay against an assignee, without a demand.   The case is not fully reported, and it may in its facts have presented a case of a *tortious taking;* if so, it was rightly decided.   But it is a fundamental mistake, in my opinion, to hold that there is a *tortious taking* in these cases of fraud where the property is absolutely delivered, freely and intentionally, in pursuance of an express contract of sale; and much more so that an assignee or innocent bailee, or other person receiving such property by *delivery*, without personal complicity with the fraud, can be liable to an action for such property as for a conversion thereof, without a demand.   I think the rule is clearly otherwise, and that it may be stated as a proposition universally true, that no man can be subjected to an action in respect to personal property in his possession, received by delivery, without personal wrong on his part, until he has refused to deliver it, upon a lawful demand, to the true owner.   (*Morris* v. *Rexford*, 18 *N. Y. Rep.* 552.   *Ely* v. *Ehle*, 3 *Hill*, 348 *and* 350. 3 *Comst.* 506.   *Fuller* v. *Lewis*, 13 *How.* 219.)   But in this case a rescission of the contract could not be made upon such

easy terms. A party desirous of rescinding a contract, as Judge Cowen says, in *Voorhees* v. *Earl*, (2 *Hill*, 293,) " must do so *in toto*, and cannot hold on to any part." While the plaintiffs in this case practically have admitted this to be the rule, by the tender they made before the commencement of the suit; at the trial they virtually repudiated it and deny its correctness now, so far as to claim to hold on to the $3534.41 cash received by them on the purchase to indemnify them for the goods sold by Joslin. It appears that the defendants not only did not keep the tender good, but that they refused to produce the money, at the trial, upon demand of the defendants then and there made, and upon their offer to relinquish all claim to the goods replevied. This was the precise case in *Wheaton* v. *Baker*, (14 *Barb*. 594,) where 166 stoves were sold and part of the price paid in the notes of third persons. The vendee sold 66 of the stoves before the vendor elected to rescind, when he did not tender the notes received nor produce them on the trial, but claimed the right to retain them to indemify himself for the stoves sold. The court held that this was inadmissible, and that the contract was not rescinded. In *Voorhees* v. *Earl*, (2 *Hill*, 288,) the plaintiff purchased 220 barrels of flour; 55 proved bad, and they offered to return them, and demanded back the purchase money. The court held that they must rescind *in toto*, and could not affirm the contract in part and rescind in part. So in *The Matteawan Co.* v. *Bentley*, (13 *Barb*. 641,) machinery was sold for $1283.37, part of the price paid, and the vendor claimed to rescind and recover the balance without offering to return the money received. This, it was held, could not be done. A different rule, and one in conflict with this case, was held in *Ladd* v. *Moore*, (3 *Sandf*. 589,) where a plaintiff who sold goods for $480, and received $200 cash in hand, was allowed to recover in trover of the fraudulent vendee for the balance of the purchase money as upon a rescission of the contract. This case did equity between the parties, but it rests upon no principle. The contract clearly

was not rescinded, and could not be while the plaintiff kept the $200 in hand. It was virtually affirmed, so far as relates to this $200, and rescinded for the balance. Some excuse was made for not tendering the $200 before the commencement of the suit, but I see none for not producing it at the trial.

If we are right in the view that a tender to Joslin, or to his assignee, was necessary in this case, to effectuate a rescission of the contract, I cannot see upon what principle it can be maintained that the plaintiff need not keep the tender good, and was not obliged to produce the notes and money received, on the trial. I think they might have brought them into court before trial, as was done in *Stewart* v. *Austin,* (1 *Metc.* 557,) but when they refused to produce them at the trial, I do not see how the action could be further maintained. In these cases of the rescission of contracts by the acts of the parties, the party seeking to rescind acts upon his strict legal rights, and there is, as we have seen, no rule which allows him to keep back any part of the consideration received. It may be that Joslin, in this case, had sold more of these goods in value than the amount of the money received by the plaintiff, but on the rescission of the contract the title of the goods unsold became and was reinvested in the plaintiff and the title to the money in the defendants or Joslin ; and I know of no way of adjusting the equities between the parties, on the trial of an action at law, or of making equitable terms at the circuit, on the trial of an action of replevin for the goods. If the action had been one in *equity,* the plaintiff seeking a rescission through the action of the court and offering to do equity, the court would be called upon to take into consideration the situation of the property, the amount thereof sold by Joslin, and the amount of consideration received by the plaintiff, and could have done complete justice to the parties upon the whole case and in view of all its circumstances. But I can see no way to adjust such equities at *law,* or to do complete justice to parties in a case like this, when part of the goods

are sold and part paid for. When, therefore, the plaintiffs refused, on the trial, to make full restitution of all they had received towards the purchase of the goods, I can see no other course that could have been taken at the circuit, except for the court to order a nonsuit. The nonsuit was moved upon this ground among others, and although it was not put upon this express ground, it must nevertheless be sustained, as the point was distinctly made. If a nonsuit is right upon any of the grounds urged at the trial, or otherwise, it cannot be set aside.

A new trial should therefore be denied.

[MONROE GENERAL TERM, March 5, 1860. *Welles, Smith* and *Johnson,* Justices.]