BENJAMIN GOULD, APPELLANT, *v.* THE CAYUGA COUN-
TY NATIONAL BANK OF AUBURN, AND NELSON
BEARDSLEY, RESPONDENTS.

*One seeking to rescind a contract, for fraud, must restore what he received under it.*

This action was brought by the plaintiff to recover damages for an alleged
breach by the defendants of an agreement to replace certain United States
bonds loaned by him to them in 1865. The defense was that the plaintiff
had for a valuable consideration released the defendants from all liability
for his claim. Upon the trial it appeared that in March, 1873, the plaintiff
had a claim against the defendant bank, for forty-four United States bonds,
of $1,000 each, loaned to it, and a claim against its cashier, one Starin, for
eleven similar bonds belonging to him, which had been converted by Starin
to his own use, and also for certain other matters, amounting in all, in-
cluding the forty-four bonds loaned to the bank, to $93,502.43. The
bank had furnished its cashier, Starin, with funds wherewith to replace
the bonds borrowed from the plaintiff, which funds he had converted to
his own use. The bank denied its liability to the plaintiff for the bonds
borrowed by it, as well as for those taken by Starin. On March 1, 1873,
the plaintiff's claims were finally adjusted and settled by Starin's paying
to him $30,000 in cash, and giving to him his check for $116.08, and his
note for $63,000, dated on that day and payable on demand. Starin also
deposited with one Woodruff, to secure the payment of the said note, cer-
tain securities and property of the nominal value of $77,975, being sub-
stantially all his property. Of the $30,000 paid to the plaintiff in cash,
$25,000 was furnished by the bank to Starin, upon the discount of notes
for him, which notes were understood to be, and were in fact worthless; it
was also agreed as part of the settlement, that Starin should remain in the
bank as cashier until the following July, and that no bankruptcy proceed-
ings should be instituted against Starin which the bank or the defendant
Beardsley could prevent. At the time of the settlement Starin owed the
bank over $20,000. The plaintiff thereupon executed an instrument releas-
ing the defendants from all liability arising from the borrowing of the said
bonds. The agreement made by the bank was fulfilled by it, and from
the securities deposited to secure the payment of the said note some $680
had been realized and paid to the plaintiff.

Upon the trial the plaintiff sought to avoid the effect of the settlement by
showing that he had been induced to enter into it by certain false and
fraudulent representations made to him by the defendants.

*Held,* that as he had not restored or offered to restore what he had received

as the consideration of the settlement, he could not rescind the same, and that the action could not be maintained.

That he could not retain the moneys received by him from the bank, as the consideration of the settlement and release, and treat them as payments made on account of the debt due from it to him.

APPEAL from a judgment dismissing the complaint, entered upon the decision of the court, on a trial of this action at the Cayuga Circuit, without a jury.

*G. F. Comstock*, for the appellant.

*F. W. Cogswell*, for the respondents.

SMITH, J.:

The action was brought to recover damages for the alleged breach of an agreement made by the defendants to replace certain United States bonds, loaned by the plaintiff to the defendant, the bank, in June, 1865. The answer of the defendants interposed several defenses, one of which was that after the alleged breach of the agreement, and in the winter of 1872–3, the plaintiff settled and released his claim, for a valuable consideration received in part from the bank, and partly from J. N. Starin, its cashier, who was charged with having appropriated the larger part of the bonds to his individual use. The statute of limitations was also pleaded. At the trial, the plaintiff sought to show that he was induced to enter into the settlement, by certain false and fraudulent representations made by the defendants, and the trial judge so found upon conflicting testimony. But he found also, that the plaintiff had not restored, or offered to restore, what he had received as the consideration of the settlement, and his decision, that the complaint should be dismissed rested mainly upon the ground that the compromise had not been rescinded. He also held that the action was barred by the Statute of Limitations, as against Beardsley. The principal question in the case relates to the correctness of the conclusion that the settlement is a defense. In considering the question, we assume, contrary to the contention of the respondent's counsel, that the finding of fraud is warranted by the proof. This assumption, however, is merely for the purpose of discussing the question above stated, and is not

to be regarded as a decision of the point upon a review of the evidence.

It will be useful to state, with particularity, the history of the transaction and the facts relating to the compromise and its rescission. As found by the judge, they are as follows: In 1863 and for many years preceding, the defendant Beardsley was president, and the said Starin was cashier, of the Cayuga County Bank at Auburn. In April of that year, the plaintiff had on deposit in the vault of the bank, for safe keeping, a package containing fifty-five United States 5-20 bonds of $1,000 each. In June, 1865, the bank resolved to convert itself into a national bank by the name of the "Cayuga County National Bank," and at the same time authorized its cashier to borrow for the bank such bonds as might be needed to deposit with the comptroller of the currency, for that purpose, to be repaid in the same kind within six months. On the next day, Beardsley wrote to the plaintiff a letter, in which, after stating the said purpose of the bank, he asked the plaintiff to lend the bank so much of his U. S. 5-20s as might be needed for the purpose, promising that the bank would "replace the securities soon, and before any interest would become due thereon," and pledging his personal responsibility for performance on the part of the bank. The plaintiff consented to the request, and on the following day, Beardsley and Starin took forty-four $1,000 bonds from the plaintiff's package, and they were used by the bank for the purpose above stated. The remaining $11,000 of the plaintiff's bonds were placed by Starin in a private box of his own in the vault of the bank, and were not returned to the plaintiff's package. The bank also borrowed $21,000 of bonds of other parties. In August, 1865, the bank put in Starin's hands funds to the amount of $65,000 for the purpose of purchasing bonds to replace those thus borrowed, and a special account of that fund was opened with the bank as "J. N. Starin, special account." That fund Starin expended in the purchase of U. S. bonds, and the persons lending the $21,000 of bonds were repaid their bonds. Starin for a long time had been, and then was, carrying on business, with the knowledge of the bank, as a broker, making purchases of stocks and securities for different parties, and at different times had in his

private box in the vault of the bank, more than $65,000 of U. S. 5-20 bonds, and at one time he tied $35,000 of said bonds together, intending them for the plaintiff, but nothing further was done with them towards replacing the bonds borrowed of the plaintiff. Starin appropriated to his own use all of the bonds above mentioned, except the $44,000, and $21,000, of bonds, and except also $3,000 of bonds which he returned to the plaintiff June 5, 1871. In May or June, 1866, in September, 1867, in December, 1868, and in March, 1871, plaintiff inquired at the bank, of Starin about his bonds, and was at each time told that the bank was using them. Whenever the interest coupons became due on all said bonds, Starin, as cashier of the bank, reported to plaintiff a sale of such coupons with others, and gave plaintiff his (Starin's) check for the amount thereof, and the checks were deposited with the bank to the plaintiff's credit, down to and including the coupons which became due November 1, 1872. In January, 1871, Beardsley was informed by Starin that the latter had used about $30,000 of the plaintiff's bonds for his (Starin's) individual purposes, and Beardsley advised him to return them speedily, which Starin promised to do; and Starin informed Beardsley that he had not returned the bonds used by the bank. Beardsley did not communicate this information to any one till December 9, 1872, when he told E. D. Woodruff, a son-in-law of plaintiff, that Starin had stolen plaintiff's bonds, and on the next day, Beardsley made the same statement to plaintiff. No receipt or voucher was given by the bank for the plaintiff's bonds used by it, nor does it appear that the plaintiff had any knowledge, down to December 9, 1872, as to the number of his bonds actually taken by the bank.

Thereupon a controversy arose between the plaintiff and the bank, as to the liability of the bank for the plaintiff's bonds, the plaintiff claiming that the bank was liable therefor, and the bank denying such liability, it being assumed and admitted by the plaintiff, the bank and Starin, that Starin was liable for said bonds in any event. About March 1, 1873, Starin made out and delivered to plaintiff a statement of his (Starin's) indebtedness to plaintiff, amounting to $93,502.43, which amount included the bonds in controversy, and other liabilities of Starin to plaintiff. After consid-

erable negotiation, subsequent to December 10, 1872, an adjustment and settlement of all said matters in controversy between plaintiff and the bank, and of the indebtedness of Starin to the plaintiff, was finally effected by the payment to plaintiff of $30,000 in cash, the giving of Starin's note to plaintiff for $63,000, dated March 1, 1873, payable on demand, and a check for $116.08. As collateral security for the payment of the said note, Starin delivered to Harmon Woodruff, as trustee for the plaintiff, certain securities and property of the nominal amount of $77,975, it being substantially all of Starin's property; and the said trustee agreed that he would, from time to time, indorse upon the said note all sums which should be received by him upon such securities and other property. It was also agreed, as part of the said settlement, that Starin should remain in the said bank as cashier until the July after the settlement, and that no bankruptcy proceedings should be instituted against Starin which the bank or Beardsley could prevent; and Starin was so retained as cashier, and no bankruptcy proceedings were commenced against him. As part of the said settlement, the bank furnished $25,000 of the $30,000 paid to the plaintiff, and the plaintiff executed and delivered to the bank an instrument in writing, of which the following is a copy:

" Whereas, a controversy has existed, and does now exist, between Benjamin Gould and the Cayuga County National Bank, in relation to the liability of said bank to said Gould, by reason of certain transactions in regard to certain United States securities, which controversy has been amicably settled between the parties by the payment by said bank to said Gould of the sum of $25,000; now, in consideration of the receipt of said sum from said bank, I do hereby release and discharge said bank from all liability and claim, by reason of any matter or thing growing out of the matters above referred to.

"Auburn, March 12, 1873.

"(Signed,) BENJAMIN GOULD."

Such settlement was made with the assent and co-operation of Beardsley. At the time of the settlement, Starin was indebted to

the bank, in upward of $20,000. Starin gave to the bank notes for the $25,000 paid by the bank, which were made and indorsed by irresponsible parties, and were so understood to be at the time, and the bank has since charged the matter over to profit and loss as worthless. About $2,000 in money has been realized by the trustee from said trust securities and property, and a portion of the trust property remains in his hands. Of said $2,000, the sum of $680 has been paid by the trustee to the plaintiff. The court found (and this constituted the alleged fraud), that during the negotiations for the settlement, the bank and Beardsley represented to plaintiff that the bonds loaned by the bank of the plaintiff had been restored by the bank, whereas the said bonds had not, nor had any of them been so restored, and Beardsley and the bank knew they had not been restored ; that the plaintiff relied upon such representations, and that they materially influenced him to make the said settlement, and to execute the said release. The court also found that upon the trial the plaintiff deposited in court the sum of $25,000, and the interest thereon from March 12, 1873, upon the following conditions ; that said deposit shall remain in the custody of the court, and not be paid to either party until final judgment shall be rendered in the action ; the court, by rendering such judgment, or by its action under the judgment, shall restore such deposit to the plaintiff unless it shall be determined in and by such final judgment that the defendant, the Cayuga County National Bank, ought to recover back the said sum of $25,000, so paid to the plaintiff, in which case the sum of money herein mentioned shall be awarded to the defendant, the bank.

The court held, as conclusions of law, that the defendants became liable to restore the said $55,000 of bonds, and that they have not been restored. He also held, that the plaintiff has not rescinded the agreement, under and as a part of which he executed the release, and that such release is a good defense, as to each defendant.

In regard to the statute of limitations, the court found as facts, that the interest which became due on the said bonds, next after they were borrowed by the bank from the plaintiff, fell due November 1, 1865, and that the plaintiff's right of action accrued on that day ; that

this action was commenced January 20, 1876, and that it was not commenced as to either defendant within six years after the cause of action accrued.    He also held, as matter of law, that the action is barred, as against Beardsley, by the statute, but ,that it is not barred, as against the bank, by reason of the facts found in regard to the payment of the interest on the bonds.

It appears, from the foregoing statement, that the consideration for the settlement and release, moving from the bank, was its agreement (1) to pay to the plaintiff $25,000, in hand ; (2) to forego its right to institute proceedings in bankruptcy against Starin, by reason of the preferential assignment in trust, executed by him for the plaintiff's benefit; and (3) to retain Starin in its employment as cashier, for a specified time.   The agreement of the bank was fully executed.   In addition, Starin paid to the plaintiff $5,000 in cash, and gave his check for $116.08, and his note for $63,000, the latter secured by a transfer of all his property in trust, portions of which have been sold by the trustee, and converted into money, $680 of which has been paid to the plaintiff.   All that the plaintiff thus received he retained when he commenced this action.

The general rule is that before a party can rescind a contract, he must restore the other party to the condition in which he stood before the contract was made, and this involves a restoration of everything received by him under the contract, whether money, goods or securities. (1 Story on Cont. [5 ed.], § 623 ; *Thayer* v. *Turner*, 8 Metc., 550 ; *Masson* v. *Bovet*, 1 Den., 69.) This general rule is not questioned by the learned counsel for the appellant, but he contends that it has no application to the present case, for the reason that as to the moneys received by the plaintiff, in consideration of the settlement and release, they were but part of a debt now ascertained to have been then due to him from the bank, as well as from Starin, and which he, therefore, has the right to retain ; and as to the agreements by the bank in aid of the trust created by Starin for the plaintiff's benefit, the bank cannot complain of the preference which the plaintiff thus obtained, as it was a performance in respect to the same debt for which the bank was liable, and the bank, on paying the debt, will be entitled, equitably, to be subrogated to the plaintiff's rights in respect to the trust

property. The argument is plausible, but we think it is not sound. However meritorious the claim of the plaintiff against the bank, it was a mere *claim* or *chose* in action, until the settlement transmuted it into money in possession, and as long as the plaintiff retains the money, the parties are not restored to their original condition. The settlement is not rescinded, so long as it is made to perform the office of compelling the bank to pay a debt which it refused to pay, and which it would not have paid except as a condition of the settlement. The retention of the money, is an affirmance of the settlement. Suppose the bank, instead of paying the $25,000 in money, had paid it in bonds. Could the plaintiff have treated the settlement as rescinded, without restoring the bonds? The reason of the rule above stated is that the party rescinding shall put the other party in *statu quo*, by restoring and re-vesting his former property in him, without putting him to an action to recover it. (Per PARSONS, Ch. J., in *Kimball* v. *Cunningham*, 4 Mass., 502.) If a money consideration may be held on to by the party rescinding, to be satisfied by an abatement of the damages recovered, why not, also, goods or securities to be deducted from the recovery, at their money value? The question is not affected by the circumstance that the present action is on contract. If the plaintiff's bonds had remained in the possession of the bank, he could have maintained trover or replevin for them. Whether the present action is in tort for a conversion of the bonds, or on contract for a breach of the agreement to return the bonds (and the facts stated in the complaint are sufficient to maintain the action in either aspect), the point under consideration must be determined upon the same principles as if the proceeding was *in rem* to recover the bonds themselves. (*Matteawan Co.* v. *Bentley*, 13 Barb., 641, per BROWN, J., delivering the opinion of the court, p. 646.)

Is not the plaintiff's reasoning fallacious in treating that as a partial payment, which was intended by both parties as a payment and settlement of the entire claim? Upon the assumption that it was a partial payment, he insists that the rule is satisfied by his abating the sum he has received, from the amount of his damages, and taking judgment for the remainder.

The only adjudged case that we are aware of, in which that course

was permitted in an action at law, is *Ladd* v. *Moore* (3 Sandf., 589). That case had some peculiar circumstances, not existing here, which evidently influenced the decision. It was referred to, manifestly with some distrust of its soundness, in *Wheaton* v. *Baker* (14 Barb., 594), and it was repudiated in *Stevens* v. *Hyde* (32 Barb., 171), where Justice E. D. SMITH said of it that "it did equity between the parties, but it rests upon no principle." (p. 182.) The case last cited is an instructive one. The plaintiff sold goods to one Joslin, partly for cash and partly for his notes on time. Joslin sold part of the goods, and soon after failed, and assigned all his property, including the remainder of the goods in question, to the defendants, in trust for the benefit of his creditors. Subsequently, the plaintiffs tendered to Hyde, one of the defendants, the money and a part of the notes, and demanded the goods. At the trial, the plaintiffs brought into court a part of the notes to be given up (some of the notes having been collected by them after the tender), but they declined to bring in any of the money; and the defendants offered to accept the notes and money tendered to Hyde, and to relinquish all claim to the goods, which the plaintiffs refused. The action was for delivery of personal property, on the ground of fraud in the purchase. The plaintiffs were nonsuited. The general term denied a new trial, on the ground that the plaintiffs should have kept their tender good. The plaintiffs claimed the right to hold on to the money received by them, to indemnify them for a portion of the goods which Joslin had sold. On that point, the court said, "In these cases of the rescission of contracts by the acts of the parties, the party seeking to rescind, acts upon his strict legal rights, and there is, as we have seen, no rule which allows him to keep back any part of the consideration received. It may be that Joslin, in this case, had sold more of these goods in value than the amount of the money received by the plaintiffs, but on the rescission of the contract the title of the goods unsold became and was re-invested in the plaintiff and the title to the money in the defendants or Joslin; and I know of no way of adjusting the equities between the parties on the trial of an action at law, or of making equitable terms at the circuit, on the trial of an action of replevin for the goods. If the action had been one in *equity*, the plaintiff

seeking a rescission through the action of the court, and offering to do equity, the court would be called upon to take into consideration the situation of the property, the amount thereof sold by Joslin, and the amount of consideration received by the plaintiff, and could have done complete justice to the parties upon the whole case and in view of all the circumstances."

Now, in that case, it was practicable to abate the money received from the value of the goods, and to let the plaintiffs have judgment for the difference in value, or for a return of the goods unsold; but, to have done so would have permitted the plaintiffs to rescind in part and affirm in part, and for that reason it was denied, although, for aught that appears, it would have worked equity.

So, in *Wheaton* v. *Baker* (*supra*), where one hundred and sixty-six stoves were sold, and part of the price paid in the notes of third persons. The vendee sold sixty-six of the stoves before the vendor elected to rescind, when he did not tender the notes received, nor produce them on the trial, but claimed the right to retain them to indemnify himself for the stoves sold. The court held that this was inadmissible, and that the contract was not rescinded.

So, also, in *Matteawan Co.* v. *Bentley* (*supra*), machinery was sold for $1,283.37, part of the price paid, and the vendor claimed to rescind and recover the balance without offering to return the money received. This, it was held, could not be done.

The views expressed by the learned judge in *Stevens* v. *Hyde*, as to the peculiar capacity of a court of equity to deal with a question of this nature, are illustrated by the case of *Allerton* v. *Allerton* (50 N. Y., 670), cited by the appellant's counsel. That was an action in equity, in which the plaintiffs alleged that the defendant had fraudulently induced them to sell to him their interest in a certain firm, in which the several parties were partners, for a price paid, which was afterwards discovered to be much less than its value. The relief demanded was that the sale be declared void; that the defendant account for all moneys received by him, and that the plaintiffs have judgment for their portion of the profits under the agreement, less the amount they had received. It was held by the Court of Appeals that no tender of the amount received was necessary before suit, as the judgment *sought for*, and given,

allowed it to defendant, and this was, in fact, an actual return of the consideration paid. The case, we conceive, has no application to the one before us, except as it illustrates the distinction between an action in which the equitable powers of the court are invoked, and one which seeks relief according to the strict principles of law. Here, no judgment is asked for, allowing to the defendants the money received; no reference is made in the complaint to the settlement or its rescission; and no equitable relief is demanded. If an answer had not been interposed, the plaintiff would have been entitled to judgment for the whole value of the bonds, while retaining the money paid on the settlement.

As to the consideration moving from the bank, other than the money paid, it is manifestly impossible to restore the bank to its former situation. Its right to impeach the preferential assignment made by Starin is gone, and its agreement to retain him in its employ is fully executed. It is no answer to say that, on paying the plaintiff's claim, the bank will be subrogated to the rights of the plaintiff in respect to the trust property. The right which it surrendered in consideration of the settlement attached as an incident to the debt which it *then* held against Starin. To compel it to increase that debt by satisfying the claim which the plaintiff also holds against Starin, in order to protect itself, is not restoring it to its former position. It is through no fault of the defendants that restoration is impossible. That feature of the case results from the nature of the terms of the settlement. As it is not possible to restore the bank to its former condition, the right of rescission does not exist. The plaintiff mistook his remedy. Assuming that he was defrauded, his remedy was to sue for the damages which he suffered by the fraud. The following cases, in addition to those already cited, sustain wholly or in part the views above expressed. (*Curtiss* v. *Howell*, 39 N. Y., 211, per GROVER, J., 215; *Cobb* v. *Hatfield*, 46 Id., 533; *Pullman* v. *Alley*, 53 Id., 637; *McMichael* v. *Kilmer*, 76 Id., 36; *Sinclair* v. *Neill*, 3 Supm. Ct. [T. & C.], 74; *Lester* v. *Union Manufacturing Co.*, 1 Hun, 288; *Bedell* v. *Bedell*, 3 Hun, 580.)

The tender, at the trial, of the money paid by the bank was of no avail. It was a tender of but a part of the consideration mov-

ing from the bank, and it was not unconditional. And the better rule seems to be that in the case of an action at law in disaffirmance of a contract, the tender should be made before suit. This seems to result as a corollary from the doctrine, that if a party defrauded would disaffirm the contract, he must do so at the earliest practicable moment, and before he takes any step in affirmance of it. The rule does not apply, of course, where the thing received is of no value whatever to either party, or where the consideration consists of the promissory note of the defendant, which, being a mere promise, is annulled by the rescission, and it is enough if it be returned, or offered to be returned, at the trial.

Without discussing the defense of the statute of limitations, it results from the foregoing conclusions that the judgment should be affirmed.

TALCOTT, P. J., concurred; HARDIN, J., concurred in result.

Judgment affirmed.