THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENT, v. THE NEW YORK & MANHATTAN BEACH.
RAILWAY COMPANY AND OTHERS, APPELLANTS.

*Action by the people to recover land wrongfully obtained from a town—when it*
*cannot be brought—Chapter 49 of 1875—constitutionality of—who are neces-*
*sary parties to an action brought under it—A town cannot disaffirm a deed pro-*
*cured through fraud without restoring what it received under it.*

Chapter 49 of 1875,—providing that where money or property, held or owned
officially or otherwise for any public or governmental interest, by any pub-
lic corporation, board, officer, custodian, or agent of any portion or subdi-
vision of the State, shall, without right, be received, converted or disposed
of, the people of the State shall have a right of action to recover the same,
—does not authorize the people to bring an action to set aside a conveyance
of certain land from a town to a corporation, made in pursuance of a reso-
lution adopted at a town meeting, which resolution directed the said land.
to be so conveyed on payment by the said corporation of a sum to be fixed by
appraisers, on the ground that the corporation packed the town meeting
with spurious and fraudulent voters, and thereby procured the adoption
of a resolution detrimental to the interest of the town.
If such an action could in any event be maintained, the town would be a neces-
sary party thereto, as it, being the party defrauded, would be entitled to
decide whether to repudiate or affirm the sale, and also to be heard as to
the disposition to be made of the land in case the conveyance should be set.
aside.
To authorize either the people or the town to disaffirm or set aside such a deed,
all that had been received under it would first have to be restored.
*Quære*, as to the constitutionality of those provisions of the act of 1875, vest-
ing the title to the property or money, the subject-matter of the action
brought thereunder, in the people of the State.

APPEAL from an interlocutory judgment entered upon a decision
overruling a demurrer interposed to the complaint.

The complaint alleged that Coney Island, except such parts as
have been rightfully alienated, belongs to the town of Gravesend,.
and is vested in the town or the present freeholders and inhabitants.
for the use of the town; that prior to April 1, 1878, the New York
& Manhattan Beach Railway Company took, and has retained,.
possession of a tract of land upon Coney Island, extending about
two and one-half miles, and containing about five hundred acres,.
and alleges that such possession was wrongful, as against the town.

of Gravesend; that a portion of it, about three thousand feet in extent upon the ocean, was held by lessees under leases from the town, and the defendant railway company got possession of it by purchasing the rights of the lessees. That the rest of it was taken possession of by the railway company, claiming title under deeds or grants of salt meadow lands from individuals claiming some title thereto, and that the railway company claimed that the deeds ran to the ocean and included the beach, which is the valuable portion of it, and of which they had taken, and still held possession. That being desirous of acquiring the title of the town of Gravesend to the property so taken possession of, the railway company sent a large number of men with one Sully, a director of the company, to lead and direct them, to the town meeting held on the first Tuesday of April, 1878, in order wrongfully and illegally to control the votes and determinations of the town meeting. That a resolution was presented at the town meeting by the railway company or by their procurement, reciting that there was a dispute between the town of Gravesend and the railway company, as to the title of the land occupied by them, and resolving that the town should relinquish their title to the property in possession of the railway company, for a consideration, to be fixed as follows : An appraiser on the part of the town was to be appointed at that meeting, the railway company was to choose another ; if the two should disagree they were to appoint another, whose decision should be final. Upon payment of the amount so fixed the commissioners of common lands of the town were authorized and directed to give a deed of all the right and interest of the town in the said land :

That the said resolution was voted for principally by the cries and acclamations of a large number of persons in the employment of the said company: that a ballot was called for and voted down by the same persons ; that a count or division of the house was called for and refused ; that it was impossible to tell whether there was a majority voting for or against the measure, and especially impossible to tell how many, and which of the votes were legal ; that a large number of the persons present, who were shouting and voting for the resolution, were not legal voters. That during all the time Sully was actively engaged leading these persons, and by cries and

vociferations voting with them ; that Sully was not a resident of the town or entitled to vote ; that Stephen I. Voorhies was appointed appraiser on the part of the town, and that he was voted for in the same way and by the same parties.

That the resolution and appointment were carried through by a mob of transient persons sent there for the purpose by the railway company, with the connivance of Voorhies, the chairman ; that the said Voorhies agreed to $1,500 as the compensation to be paid to the town for their title and interest ; that the said appraisal was fraudulent, and was procured from Voorhies by the railway company by undue influence, and that it was grossly inadequate in amount and was known to be so by Voorhies himself, and by the railway company ; that the railway company paid the $1,500 and received the deed, which was recorded; that several town meetings were afterwards called and holden, upon the application of the inhabitants, to institute a suit to set aside the said deed and have the rights of the town adjudicated, but that upon each occasion the meetings were packed and controlled by the employees of the railway company, led by Sully as before ; that the railway company have conveyed to the improvement company, the other defendant ; that the property so owned by the town has been obtained by the defendants without right, and is still so held, and has not been recovered back or restored.

The judgment demanded was, that the deed be set aside ; that the rights of the town in and to the land be ascertained and determined. That if the defendants own any part of it, the boundaries between them and the property of the town may be ascertained and declared. That the defendants be adjudged to give up possession of the premises, and that they be enjoined from selling or disposing of the property, and for such other or further relief as might be given.

A demurrer was interposed upon the grounds : That the plaintiff had no legal capacity to sue ; that the complaint did not state facts sufficient to constitute a cause of action ; that there was a defect of parties in omitting the town of Gravesend, and in omitting Stephen I. Voorhies ; that there was a misjoinder of causes of action—one being against the New York & Manhattan Beach Railway Com-

pany, and the other against the Manhattan Beach Improvement Company; that several causes of action were improperly united: 1st, for obtaining and holding wrongful possession of land; 2d, to ascertain the boundaries thereof; that several causes of action were improperly united: 1st, to ascertain title; 2d, to obtain possession: that several causes of action were improperly united, viz.; 1st, to vacate and set aside a deed; 2d, to determine the title and boundaries: that several causes of action were improperly united; 1st, to set aside a deed; 2d, to declare the rights of the town.

*B. F. Tracy* and *Alfred C. Chapin*, for the appellants.

*Benjamin G. Hitchings*, for the respondent.

DYKMAN, J.:

The obstacles in the way of the plaintiff in this action are numerous and insurmountable. In the first place there is nothing in the history or language of the law of 1875 (ch. 49), under which it is instituted, which makes that statute applicable thereto. Frauds of stupendous magnitude and enormity had been perpetrated by certain municipal officers and their confederates in the city of New York, and a civil action for the recovery of the money and funds fraudulently diverted, set on foot in the name of the people of the State of New York, was defeated by a decision of our highest appellate tribunal against its maintenance. Then, for the purpose of enabling the people to sustain a civil action against State, county, town and municipal officers for malfeasance, to reclaim money and property tortiously and fraudulently appropriated, the law of 1875 was enacted, providing that where any money, funds, credit or property, held or owned by this State, or held or owned officially, or otherwise, for or on behalf of any public or government interest, by any municipal or other public corporation, board, officer, custodian, agency or agent of any city, county, village or other division, subdivision, department or portion of this State, has heretofore, without right been obtained, recovered, converted or disposed of, and not actually recovered back and restored prior to the passage of this act, unto the proper and lawful official, receiver, depositary or custodian

thereof, either in specie or by full and lawful compensation for the same duly made, or where such money, funds, credit or property shall be hereafter without right obtained, received, converted or disposed of, the people of this State have in every such case and shall have a right of action for the same and for any damages, or other compensation due recoverable or that might be had on account or by reason of such obtaining receipt, conversion or disposition, notwithstanding a right of action may exist by law, for the same cause in some public authority other than the State, and although an action therefor may be pending.

This is sufficient for a comprehension of the scope and intention of the law, so far as concerns actions under it. Without verbiage or repetition the plain provision is that, where money or property held or owned officially or otherwise, for any public or governmental interest by any public corporation, board, officer, custodian or agent of any portion or subdivision of the State shall, without right, be received, converted or disposed of, the people of the State shall have a right of action for the same and for damages.

Here was no property held by an officer, custodian or agent, and no conversion thereof by any person sustaining that relation. The allegations of the complaint are that the land in question was the property of the town of Gravesend, that the defendant first obtained possession of it and then improperly procured the passage of a resolution by the annual town meeting of the town, for a valuation of the property and a sale and conveyance thereof to the defendant, which resolution was carried into execution by a conveyance to the defendant and the payment of the appraised valuation.

The specific wrong complained of is the packing of the town meeting with spurious and fraudulent voters, and thus giving a false direction to the action of that. body, detrimental to the interests of the town. This was clearly ill and wrong, but not the kind of evil intended to be redressed under the statute of 1875. It is the case of an improvident disposition by a town of its real property through the instrumentality of a town meeting controlled by unjustifiable influences. There may be redress for such a wrong, but it does not lie in the remedy the plaintiff has pursued.

It is quite true that under our political system a town has many

of the attributes of a corporation, but it does not follow that because such a body makes an improvident disposition of its property, even though the same is induced by fraud or wrong, a restoration can be procured by an action in the name of the people, under this statute. The statute has relation to wrong, frauds and conversions perpetrated by a corporation or natural person sustaining some fiduciary relation to the true owner, not to dispositions of property by the owner, even though influenced and obtained by fraud.

In the next place, the town of Gravesend is a necessary party to this action. The statute of 1875 provides, beyond what has already been quoted, that on the commencement of any action or judicial proceeding under it for the recovery of money or property by the State, all such money and property, if not so previously vested, shall then forthwith be vested in the people of the State of New York, and are by force of such suit, action or judicial proceeding, and of this act, transferred to and vested in the people of the State. This portion of the statute proposes to take private property either of an individual or a corporation and transfer it to the State without compensation, in violation of the provisions of the Constitution in that behalf. If given any operation in this case, it would transfer the property in question to the State and vest the title thereof in the people.

If made a party to this action, the town may raise objection to this disposition of the property, or it may acquiesce therein, as any party may waive a constitutional provision existing for his benefit. Not being a party to the action, none of the proceedings therein will have any binding force against the town.

True it is, that section 3 of the act gives power to the court to make such order and judgment as may be just and equitable for the disposition of the proceeds of any recovery in the action, so as to reinstate the lawful custody which was disturbed by the wrong complained of, whether the true owner was a party to the action or not, and it has been contended that it was not the intention of the law of 1875 to deprive the owner of any property, but to devise a remedy for its recovery.

This latter view seems to give but small force to the intention

of section 1 of the law, as expressed in plain language, but it is not essential to examine it further now.

Another plain reason why the town should be made a party to this action, is this. The sale of this property, though induced by fraud, was not absolutely void, but voidable only, at the option of the town, the defrauded party. It may be that the town elects to affirm the transaction, and that can only be determined in this action by making the town a party thereto and thus presenting the opportunity to repudiate or affirm the sale and conveyance. (*Matteawan Company* v. *Bentley*, 13 Barb., 641; *Baker* v. *Robins*, 2 Denio, 138; *Cobb* v. *Hatfield*, 46 N. Y., 533.)

Another reason why this action cannot be sustained, is that if the town elects to disaffirm the sale, before any measures can be adopted in that direction, whatever has been received in pursuance of it must first be restored. There is no rule of law or justice that will permit the State to take the property in question from the defendants, while the town holds on to the money which they paid for it. The sale and conveyance remained in full force and operation until disaffirmance and restoration by the town. (See cases last cited.)

The judgment must be reversed, with costs and disbursements.

BARNARD, P. J., concurred; GILBERT, J., not sitting.

Judgment reversed, and judgment for defendant, with costs, unless the plaintiff amend in twenty days, on payment of costs.