32   322
86h  307
32b  322
42ap459

BLISS and others *vs.* COTTLE.

In an action to recover the possession of goods alleged to have been obtained fraudulently, the plaintiff may declare generally, claiming the property as his, and give the special facts in evidence, on the trial, to establish the fraud.

Where a purchase of goods is effected by means of fraudulent representations, the sale being upon credit and the property absolutely delivered, the contract of sale is merely voidable, and passes the title, which remains in the purchaser, until the vendor elects to disaffirm it, as he has the right to do, within a reasonable time after the discovery of the fraud, while the property remains in the hands of the purchaser, or at any time before it has passed to a bona fide purchaser.

The assignee of the fraudulent vendee, under an assignment for the benefit of creditors, stands in the place of his assignor, and has no higher right of property than the latter.

In case of an assignment by the fraudulent vendee, it is sufficient for the vendor to give notice to the assignee, of the fraud and of his claim or election to rescind the contract, and to demand the goods of him.

Where there is no pretence that the assignee was a party to, or cognizant of, the fraud, he is not bound to give up the goods until he has been required to do so by the vendor, upon a distinct demand, with notice of an explicit assertion of his claim that the goods were obtained by fraud.

Such demand must be made by the vendor in person or by some one duly authorized by the vendor to make it. A *subsequent ratification*, by the vendor, of an unauthorized demand made by a person assuming to act on his behalf, will not be sufficient to avoid the sale, and to entitle the vendor to sue for the conversion of the goods.

APPEAL from a judgment entered upon the report of a referee. The action was brought against the defendant to recover the value of certain parcels of dry goods, sold by the plaintiffs to one Fay, upon his fraudulent representations as to his pecuniary ability and circumstances. The goods were sold at various dates, from September 23 to October 19, 1857, amounting in all to $2014.65. Three other parcels of goods had been purchased of them, in respect to which no fraud was pretended or found, amounting to $486.80.

On the 25th December, 1857, Fay made an assignment of his property to the defendant, in trust for the benefit of creditors, who under it took possession of the property and pro-

Bliss *v.* Cottle.

ceeded in discharge of the trusts. On the 19th January, 1858, one Cooper, a clerk of the plaintiffs, returning from the western states, casually passing through Canandaigua, stopped over a day, and learning of the assignment, demanded of the defendant "the goods bought of Bliss & Co." No original authority from the plaintiffs to Cooper, to rescind these contracts or make this demand, was pretended or proved. The defendant neglected to comply; and the next day this action was brought, for a *conversion.* The cause was referred to a sole referee, who at the trial allowed Cooper to give his opinion as to what amount of goods bought of the plaintiffs were on hand at the time of the demand, he having seen them in Fay's store at the time, without distinguishing between the different purchases. The witness stated that his belief was that of the sum total of the goods purchased of the plaintiffs, at least two-thirds were there. The fraudulent representations alleged in the complaint were found by the referee to have been made, as alleged. Amount of the fraudulent purchases, as per report, $2014.65, two-thirds of which is $1343.10, for which, with interest, judgment was entered, and the defendant appealed.

*J. R. Cox,* for the appellant.

*J. C. Smith,* for the plaintiff.

*By the Court,* E. DARWIN SMITH, J. Upon the chief question of fact tried before the referee in this action no point is made, here. That the goods for which this action was brought were obtained from the plaintiffs by false representations, must therefore be assumed as true. The plaintiffs' right to declare generally, claiming the property as theirs and give the special facts in evidence on the trial to establish the fraud, is, I think, undoubted. It is so held expressly in *Hunter* v. *Hudson River Iron Company,* (20 *Barb.* 493,) which on this point we think was rightly decided.

The questions chiefly discussed on the argument relate to the absence of authority on the part of the person making the demand of the property, and asserting the right to rescind the contract on the part of the plaintiff. Nothing having been received by the plaintiffs on the sale, or afterwards, towards the purchase of the goods in question, they had nothing to restore on the rescission of the contract. All that was necessary to do to entitle them to reclaim their property was distinctly to assert the right to rescind the contract for the fraud, and to demand the goods. The sale being upon credit and the property absolutely delivered, the contract of sale was merely voidable, and passed the title, which remained in the vendee till the plaintiffs elected to *disaffirm* it, as they had a right to do, within a reasonable time after the discovery of the fraud, while it remained in the hands of the vendee or at any time before it had passed to a bona fide purchaser, as we have recently held in the case of *Stevens* v. *Hyde,*(a) where I took occasion to examine the cases on this subject with considerable care, and to which case I refer. The rule in such cases is well stated by Judge Beardsley, in *Masson* v. *Bovet,* (1 *Denio,* 73,) as follows: "A person who is induced to part with his property on a fraudulent contract may, on discovering the fraud, avoid the contract and claim a return of what he has advanced upon it. But if the party defrauded would *disaffirm* the contract, he must do so at the earliest moment after discovering the cheat. That is the time to make his *election,* and it must be done promptly and unreservedly. The election is with him; he may *affirm* or disaffirm the contract." Chancellor Walworth states the rule in pretty much the same language in *Lloyd* v. *Brewster,* (4 *Paige,* 540,) and see also *Knowles* v. *Bigelow,* (12 *Pick.* 312.) The defendant being an assignee of the fraudulent vendee, stands in his place, and has no higher right of property. (*Griffin* v. *Marquardt,* 17 *N. Y. Rep.* 28.) It was suf-

(a) Ante, page 171.

Bliss *v.* Cottle.

ficient, as we held in the case of *Stevens* v. *Hyde*, (*supra*,) for the plaintiffs to give notice to the assignee in such case, of the fraud and of their claim or election to rescind the contract and to demand the property of him. The defrauded vendor must have the right, in such case, to follow his property and to reclaim it in whose hands soever he may find it, on a proper notice of the fraud and a demand thereof, at any time before it has gone into the hands of a bona fide purchaser. Assuming, therefore, that the plaintiff had the clear right to disaffirm the sale to Fay & Co., and reclaim the goods in the hands of the defendant, the question remains, have the plaintiffs done what was essential in the assertion of such right to entitle them to maintain this action for the goods? The goods having been delivered by the plaintiffs to Fay & Co., and by Fay & Co. to the defendant, the possession of the defendant was not *tortious* but lawful. The defendant had also a naked title, but a title voidable or defeasible at the election of the plaintiffs. Until such election was made, the plaintiffs had no right of action against the defendant, and the defendant was not liable for a conversion of the property. Before the defendant was bound to give up these goods, he should have been required to do so by the plaintiff, upon a distinct demand, with notice of an explicit assertion of his claim that the goods were obtained by fraud; as there is no pretense in the case that the defendant was a party to or cognizant of the fraud. There is no proof in the case that the plaintiffs in person or by any direct act or declaration, in words or otherwise, ever elected to avoid the original sale to Fay & Co. There is no direct proof that they ever knew of the fraud, or ever claimed the right to reclaim the goods upon that or any other ground. The right to commence this action must have been complete and perfect when the suit was commenced, and it obviously cannot be maintained upon a demand or assertion of right involved simply and exclusively in the commencement of the action itself. Independently of the suit, the plaintiffs are bound to show their right to com-

mence it when it was instituted. (7 *Cowen*, 739. 7 *Barn. & Cress*. 626. 14 *Barb*. 646.) They were bound to show a demand of the property with which it was unlawful on the part of the defendant to refuse to comply—a demand under circumstances which made the defendant's refusal a practical or actual conversion of the property. It appears, however, that the witness Cooper, assuming to act in behalf of the plaintiffs, made a claim to the property on the ground of the fraud, and demanded it of the defendant. The claim and demand made by Cooper, if properly authorized by the plaintiffs, was amply sufficient to avoid the sale and to entitle the plaintiffs to maintain this action. He distinctly informed the defendant that he claimed that the goods were fraudulently obtained of the plaintiffs, and at the same time demanded the delivery thereof. This was done on the 19th of January, 1858, and this suit was commenced on the next day. The complaint is not verified; but it must be presumed that the plaintiffs assented to the commencement of the suit, as it has since been prosecuted by them. The question then arises, whether the action can be maintained upon a subsequent *ratification* by the plaintiffs of the unauthorized demand thus made by Cooper assuming to act on their behalf. When Cooper asserted the right to reclaim the property, and demanded the delivery thereof to him, that act being unauthorized, the defendant clearly was not bound to comply with it. Delivery of the property to Cooper at that time, in compliance with such demand, would neither have bound the plaintiffs nor absolved J. W. Fay & Co. from their liability on the contract, to pay the price of the goods. If the goods had been delivered to Cooper, in compliance with his demand, and had been consumed by fire that night, or at any time before the plaintiffs had ratified the act, the loss would have fallen upon the defendant, and J. W. Fay & Co. would have had no defense to an action for the price. So it would have clearly been had Cooper received the goods and absconded with them, or otherwise have converted the same to his own use.

The general principle undoubtedly is that a subsequent ratification by the principal of an act for his benefit, done without authority, will have the same effect as an original authority to bind the principal, not only as regards the agent himself but in regard to third persons. (*Story on Agency,* § 244. *Paley on Agency, by Loyd,* 171, 172.) But there are some acts of unauthorized persons which cannot be ratified so as to give them validity as against third persons. Paley states the rule to be that, "When a demand or notice conveyed by an agent is intended to affect third persons with damages for non-compliance therewith, it is necessary that the agent should be duly authorized." Thus a notice to quit, by an unauthorized person, cannot be rendered valid to determine a lease by a subsequent ratification. (*Right on the demise of W. Fisher* v. *Cuthell,* 5 *East,* 49.) In this case Lord Ellenborough says, that "a ratification given afterwards will not do, because the tenant was entitled to such a notice as he could act upon with certainty." And Lawrence J, says: "The rule of law that '*omnis ratihabitio retro trahabitur et mandato priori acqui paratur,*' seems only applicable to cases where the conduct of the parties on whom it is to operate cannot in the meantime depend upon whether there be a subsequent ratification." The same point was held in the same way in *Doe ex dem. Mann* v. *Waller,* (10 *Barn. & Cress.* 626.) In *Cole* v. *Ball,* (1 *Camp.* 478,) and *Corn* v. *Calary,* (1 *Esp.* 115,) it was held that a demand of a debt by an unauthorized person could not be ratified so as to take away a right to plead a prior tender, because the unauthorized person could not give a proper discharge of the debt. For the same reason a demand by a stranger, of goods, will not be evidence of a conversion. (*Paley by Dunlap,* 344. *Story on Agency,* § 247. *Solomon* v. *Daur,* 1 *Esp.* 83.) A demand of payment of a promissory note by a stranger is not good, though ratified, because the debtor is entitled to the note, or a discharge of the debt. (7 *Mass. R.* 483.. *Bank of Utica* v. *Smith,* 18 *John.* 230.) If the property in this case con-

fessedly belonged to the plaintiffs, and the defendant held it as a mere trustee, subject to the delivery upon request, then I think a sufficient demand would be established to sustain the action, within the cases of *Spencer* v. *Wilkes*, (9 *Alabama, Rep.* 744;) 29 *Miss. Rep.* 364; and *Watt* v. *Potter*, (2 *Mason*, 31.) But this is not such a case. A rescission or disaffirmance of the contract by the plaintiffs in person, or · expressly authorized by them, should precede the demand of the property. Before such election to disaffirm, distinctly made and notified to the defendant, he could not be guilty of a conversion of the property. This view of the case superseded the necessity of examining the other points in controversy. I think the judgment should be reversed and a new trial granted.

New trial granted.

[MONROE GENERAL TERM, September 3, 1860. *Smith, Johnson* and *Knox*, Justices.]