White agt. Dodds.

# SUPREME COURT

JAMES WHITE, JR., and JAMES CUSHING agt. JAMES DODDS.

In an action of *replevin* for the wrongful detention of goods sold by the plaintiff to the purchaser (the credit unexpired), the action proceeds in *disaffirmance of the contract* under which the goods were purchased; and the plaintiff is bound to show a justifiable reason for repudiating the contract before he can recover in the action. Such a reason is shown where fraudulent misrepresentations of the purchaser's solvency at the time the purchase was made, are clearly proved.

No distinct act of disaffirmance of such a contract beyond claiming the property, has ever been held to be necessary as against the wrong-doer. But in case any money or property has been received under the contract, the law requires that such money or property must be *restored* before the disaffirmance can become effectual. And this restoration it is not necessary should be made before suit brought; it may be made at the *trial.*

If a person obtains possession of goods by fraud, the act is wrongful and confers no title. No *notice* is necessary to the offender, and no *demand* need be made on him.

As against the *general assignee* of the wrong-doer, who obtains possession of the goods peaceably, by manual delivery from the wrong-doer, although a *demand* of the property before suit brought may be necessary, it is not necessary to accompany or precede that demand by a declaration of disaffirmance of the contract, and that such disaffirmance is on the ground of fraud perpetrated by the assignor in making the original purchase.

There is no *legal obligation* on the true owner of the goods to disclose the source or the particulars of his title. This is as in other cases developed at the trial.

*Albany General Term, September,* 1863.

*Before* Gould, Hogeboom *and* Miller, *Justices.*

Motion for new trial on exceptions, ordered to be heard in the first instance at the general term.

Ira Shafer. *for plaintiffs.*

Henry Smith, *for defendant.*

Hogeboom, J.   Being unable to concur in the result to which my brother Miller has arrived in this case, or in the course of reasoning which led to it, I proceed to state briefly my own views.   Several questions present themselves for examination.

1. Was a disaffirmance of the contract in this case necessary to entitle plaintiffs to recover ?   And if so, in what way must that disaffirmance be made and shown ?

2. Was such disaffirmance in fact made, and was it justified by the facts of the case ?

3. Was a demand of the goods necessary before bringing suit, and in what form was it necessary to be made ?

4. Was such demand in fact made ?

5. Were the defendant's objections to evidence properly overruled ?

6. Was the charge of the judge exceptionable ?

The action as appears from the complaint, is replevin for goods wrongfully detained.   The answer is a general denial, and a denial of the wrongful detention.   It is obvious from the evidence that the action was founded upon a supposed right to disaffirm for fraud, the contract of sale of the goods made between the plaintiffs and Charles Ferguson, who was afterwards the assignor of the goods to the defendant, under a general assignment for the payment of his debts.   As both of the sales from plaintiff to Ferguson, were upon a credit of six months, neither of which had expired before the commencement of the action, and as furthermore, the suit was brought to recover the goods, instead of the price

of them, it is plain that the plaintiffs in bringing the suit proceeded in disaffirmance of the contract of sale, and were bound to show a justifiable reason for repudiating the contract before they could recover in the action.

This reason was found, as they allege, in the false and fraudulent representations of Ferguson as to his property and pecuniary responsibility, which furnished the inducement to the sale of the goods. The question of fraud was submitted to the jury, and their verdict establishing the existence of it is not impugned. It appears to have been very satisfactorily proved. The plaintiffs sold two bills of goods to Ferguson in the fall of 1860, amounting to nearly $1,000, upon his representation that his stock of goods was worth some sixteen or seventeen thousand dollars, and that his debts amounted to only six or seven thousand thousand dollars. This was at the time of the sale of the first bill of goods in September, 1860. On the purchase of the second bill on the 9th or 10th of November, 1860, he represented that he was worth as much or more than he was in September, and owed less, and that there was no foundation for the reports unfavorable to his solvency. On the strength of these representations, which were well calculated to inspire confidence, the plaintiffs' agent sold him the goods. I see no plausible ground for the objection to the questions put to him whether he *relied* on these statements of Ferguson in making sale of the goods. They are the ordinary questions put to witnesses in order to show the obtaining of goods by false pretences.

On the 26th of November, 1860, Ferguson as an insolvent debtor made a general assignment of his property to the defendant Dodds, in trust to pay his debts, and the title thus acquired was the only one under which the defendant claimed any right to hold the goods. The inventory attached to the assignment showed assets to the amount of $17,522.44, and liabilities to the amount of $28,531.92, a deficit, therefore, of more than $10,000 to pay debts, and

an amount of indebtedness exceeding by more than $20,000 that stated to the agent of the plaintiffs. It presented therefore a very clear case of fraud, and a consequent right to disaffirm the contract.

I apprehend no particular form, nor any-form of words is necessary to give effect to the act of disaffirmance. It is an *act* performed by the disaffirming party, and it is effectually performed by asserting or enforcing title to the property previously agreed to be sold. If a person obtains possession of goods by fraud, the act is wrongful and confers no title. No notice is necessary to the offender, and no demand need be made on him. If a trespasser takes your property he acquires no right thereby, and you are not required to disaffirm his possession otherwise than by retaking the property by your own act or by process of law. If a person takes your property by your consent, by contract or by license, he has a lawful possession. If obtained by *license*, his possession may be terminated by the simple act of demand, which ends the lawfulness of his possession. If obtained under the semblance of a contract which is void for fraud, then the consent has been extorted or obtained by deception, and it is no consent. No distinct act of disaffirmance beyond claiming the property has been ever held to be necessary. This is as against the original wrong-doer (*See Roth* agt. *Palmer*, 27 *Barb.* 654). There is another principle it is true, which in case any money or property has been received under the contract, requires that before the disaffirmance can become effectual, the money or property thus received must be restored, because a party cannot both repudiate a contract and at the same time insist on retaining its fruits or benefits. This raises the question whether the note received from Ferguson had to be restored before bringing suit, or whether it was sufficient to restore it at the trial, or give a stipulation equivalent to such restoration at the latter period, the note being accidentally absent, followed up by the production

and cancellation of the note, or its delivery to the clerk for the benefit of the defendant or Ferguson, on the argument at bar, which was done in this case. I think under the adjudged cases the latter course was all sufficient. The maker of the note is effectually protected, and that is enough. The only other object of surrendering it before suit brought would be to make the act of disaffirmance emphatic and unquestionable, and this has been repeatedly held to be well enough accomplished by its production and delivery at the trial. (*See Nichols* agt. *Pinner*, 18 *N. Y. R.* 295, 312; *Nichols* agt. *Michael*, 23 *N. Y. R.* 264, 272, 273; *Fraschieris* agt. *Henriques*, 36 *Barb.* 276; *Roth* agt. *Palmer*, 27 *Barb.* 654, *and cases there cited*; *Stevens* agt. *Hyde*, 32 *Barb.* 171.)

As against the original wrong-doer then, no form of words declaring the act of disaffirmance is necessary, nor any act of disaffirmance beyond the decisive one of claiming or seizing the property, by the act of the party or the process of the law. Nor, I apprehend, is anything more necessary under this head as against the general assignee of the wrong-doer. I do not speak now of the question of *demand* of the property, which may be claimed to be necessary, because the property is in possession of a person acquiring such possession peaceably by manual delivery from the wrong-doer, and apparent owner. I do not deem it necessary to discuss this question, because the evidence is full that the property was demanded of the defendant before suit brought. The question is, was it necessary as against such assignee, having no better title than the original wrong-doer, to accompany or precede that demand by a declaration of disaffirmance of the contract, and that such disaffirmance was on the ground of fraud perpetrated by the assignor in making the original purchase. I know of no such rule of law. The assignee is not a purchaser for a valuable consideration. He stands in the shoes of his assignor, with no better title than he, and in no respect

in any better position. Except it may be that his pos-session being peacefully and innocently acquired from the apparent owner, may be regarded as so far lawful that a demand should be made of him to deliver it up before he be subjected to an action. It may be convenient that he should be, as he generally is, distinctly apprised that the ground of the demand is the failure of his assignor to acquire title by reason of fraud in the purchase of the goods. But I am not aware of any *legal obligation* resting on the true owner of the goods to disclose the source or the particulars of his title. This is, as in other cases de-veloped at the trial. The possessor of the goods is sup-posed to know whether his title is good or not, and he com-plies with the demand of the claimant, or refuses it accord-ingly. The claimant of the goods stands upon his title, and enforces or relinquishes his demand according to his convictions of the validity of that title.

I am aware that some dicta in the opinion of Justice SMITH, in the case of *Bliss* agt. *Cottle* (32 *Barb.* 322), tend to support the proposition that in addition to a distinct demand of the property, there must also be an explicit assertion that the claimant's title is founded upon the fact of fraud perpetrated in the purchase of the goods, but there was nothing in the case requiring an adjudication upon that point, nor is it warranted, I think, by anything contained in the elaborate opinion of the same judge in the case of *Stevens* agt. *Hyde* (32 *Barb.* 171).

Be that as it may, I think there was sufficient evidence *for the consideration of the jury*, whether the ground of plaintiffs' claim to the property, to wit: on account of fraud in the purchase by Ferguson, was not intelligibly com-municated by plaintiff's agent to Dodds, the defendant. The case we must assume was properly opened to the jury at the trial, stating that plaintiffs' claim rested on the ground of fraud, vitiating Ferguson's purchase of the goods. Caldwell, the plaintiffs' agent, testified to the pur-

chase, and the representations made by Ferguson; to his demand of the goods of the defendant in the rooms formerly occupied by Ferguson; to Dodds' refusal to give them up, and to their subsequent replevy by the sheriff; and that the demand was made after the assignment. He further says : " I think I heard of Ferguson's assignment the next day after it was made, and came on within two hours after I heard of it and called on Mr. Dodds. *I asked him how the matter was ?* He said he could'n't tell much about it, and *handed me the assignment*, and said that would show me *how the thing stood* better than he could tell. I looked at the assignment. When I demanded goods of Dodds he claimed them as assignee of Ferguson." The plaintiff having read the assignment rested his case on that, and on the evidence of Caldwell. The defendant did not cross-examine the witness as to the details of the conversation with Dodds, nor move for a non-suit on the ground that plaintiffs had not claimed to Dodds to disaffirm on the *ground of fraud*, but on the ground that "no disaffirmance of the sale was proven to have been made by the plaintiffs, or on their behalf." Dodds was not sworn as a witness for the defence, and the only witness sworn was Ferguson, who contradicted Caldwell in some material particulars as to the nature of the interview between them on the purchase of the goods, but said nothing as to what transpired at the time of the demand. Nothing was suggested as to the absence of any evidence showing the grounds of disaffirmance of the contract until after the testimony was closed, and the judge had charged or was about to charge the jury. The fact that this alleged omission in the evidence was not alluded to until it was too late to correct it ; that the ground of claim of title to the goods was fully developed by the evidence and could not have been unknown to Dodds ; that the plaintiffs claimed title immediately after the assignment, and long before the expiration of the term of credit, which term of credit is presumed to have been known to

the defendant; that this claim was made to Dodds himself; that Caldwell asked Dodds " how the matter was ?" which in the absence of any explanation, is probably a brief way of stating the substance of a conversation between Caldwell and Dodds about the goods, their sale, the terms of sale, the sudden and unlooked for assignment importing insolvency, and the reason of such assignment; the fact that the goods demanded were those " originally sold;" the presentation by Dodds of the assignment, and his declaration virtually that that was the only explanation he could make of the transaction; the demand of the goods notwithstanding such assignment; the refusal to deliver; the absence of any cross-examination, or motion to non-suit on this ground; the apparently studious omission to allude to this point until after the testimony was closed, lead my mind to the conclusion that Dodds well understood the ground of plaintiffs' claim of title to the goods; that it was equally well understood at the trial, and that it would be giving effect to merely captious objections to the evidence to award a new trial upon the ground that the foundation of plaintiffs' alleged title to the property was not fairly disclosed to the defendant, or that he acted in any degree in ignorance of the nature of the plaintiffs' claim when he refused to deliver to them the goods on their demand.

The other points involved are sufficiently discussed in what has been already said, and on the whole case I am of opinion that none of the exceptions are well taken; that a new trial should be denied, and that the plaintiffs should have judgment on the verdict.

GOULD, J. I should *affirm* on the ground that notwithstanding the charge seemed to concede the contrary, a mere *demand* was all that was required when it was made of the asssignee of the fraudulent purchaser.

MILLER, J., *dissented.*