THE EQUITABLE CO-OPERATIVE FOUNDRY COM- PANY, RESPONDENT, *v.* THOMPSON HERSEE, APPELLANT.

*Election of remedies — an action by a vendor against a fraudulent vendee for the price of goods, if discontinued before judgment, does not prevent an action of trover against a purchaser thereof — what demand must be made against one purchasing goods from a fraudulent vendee for an antecedent debt.*

In the summer and fall of 1876 the plaintiff sold to the firm of M. Fisher & Co., of Buffalo, certain stoves and stove furniture, the said sales being induced by the false and fraudulent representations of the said firm as to their pecuniary responsibility, and the said goods being purchased by the said firm when insolvent and with the intent not to pay for them.

August 12, 1876, this defendant commenced an action against the said firm upon an antecedent indebtedness and entered a judgment therein by default. On October twenty-third a portion of the property so sold by the plaintiff to the said firm was levied upon and sold under an execution issued upon the said judgment, and the same was purchased by the defendant and the amount bid therefor applied upon the judgment.

On March 28, 1877, the plaintiff commenced an action upon the contract of sale against Fisher & Co., who appeared therein by an attorney but served no answer. Notice of adjustment of costs was served but they were never taxed, nor was any judgment docketed. On May seventeenth the plaintiff commenced an action against this defendant and Fisher & Co., alleging that the purchase was fraudulent and that the defendant participated in it. In June, 1879, a judgment rendered in this action in favor of the defendant was affirmed on appeal.

July thirty-first the present action of trover to recover for the conversion of such of the plaintiff's goods as were taken by the defendant was commenced. The defendant pleaded the action brought against Fisher & Co. as an exercise of the plaintiff's election of remedies, and as constituting a bar to this action. The plaintiff thereafter and on September 26, 1879, obtained, without notice, an *ex parte* order discontinuing the action against Fisher & Co. on payment of costs. The costs were tendered on that day and refused.

*Held,* that as the action against Fisher & Co. had been discontinued before the

entry of any judgment therein, and as the plaintiff had derived no benefit and the defendant sustained no injury from the prosecution thereof, that it was not an absolute election of remedies upon the part of the plaintiff and that it constituted no defense to this action.   (BARKER, J., dissenting.)

That the action against the defendant and the firm was not an affirmance of the contract of sale, as it alleged the fraud of the defendant as the ground of relief.

That the delay of the plaintiff in bringing this action was satisfactorily accounted for by the pendency of the former one.

*It seems,* that the act of the defendant in causing the property to be taken forcibly from the possession of the fraudulent vendees by issuing an execution against their property, and subsequently ratifying and approving of the levy made on the particular goods in question, constituted a conversion thereof.   (SMITH, P. J.)

It was claimed that the demand which the plaintiff had made for the goods was defective, in that it was not accompanied by a notice of the defect in the defendant's title.

*Held,* that the objection was properly overruled.   (BARKER, J., dissenting.)

It was objected that the demand was excessive, it having been made for all of the goods sold by the plaintiff to Fisher & Co., whereas it appeared that a part of the said goods were sold by Fisher & Co. to others and never came into the possession of the defendant.

*Held,* that the objection was not maintainable because:

(1.) The defendant did not put his refusal to comply with the demand on that ground, but denied the plaintiff's right to any part of the goods.

(2.) That he waived the objection by not raising it at the trial, where it might have been obviated by proof of a limited demand.   (BARKER, J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee.

*G. A. Scroggs*, for the appellant.

*G. H. Humphrey*, for the respondent.

SMITH, P. J. :

Trover for certain stoves and stove furniture claimed to be the property of the plaintiff, and to have been converted by the defendant to his own use.   The property in question was sold and delivered by the plaintiff in the summer and fall of 1876, to the firm of M. Fisher & Co., on credit.   The firm was composed of Martin Fisher and Sanford Whiting, and was engaged in the business of selling stoves and hollow-ware, in the city of Buffalo, where the defendant resided.   At the time of the purchase, the firm was insolvent, and was indebted in a large amount, nearly $10,000 of which was owing

to the defendant. The plaintiff claims that it was induced to sell said goods to said firm, on credit, by false and fraudulent representations made by Fisher as to the means and pecuniary condition of the firm, and that said firm, knowing their insolvency, purchased the said goods with intent not to pay for them. On 12th August, 1876, the defendant herein commenced an action against the members of said firm, in which he claimed judgment against them for the sum of $9,471.34, besides interest, upon twenty-six promissory notes, executed by said firm to him at different dates from the 1st of May, 1872, to 29th July, 1876. The defendants in that action made default, and Hersee did not enter up judgment against them until 23d October, 1876. Most of the goods which form the subject of this action were delivered to Fisher & Co., and received by them after Hersee sued them and before he entered up judgment. Soon after the said judgment was docketed, Hersee, by virtue of an execution issued on the same, levied upon a portion of said property of the value of $711.58, and bid it off at sheriff's sale, applying the amount of his bid towards the satisfaction of his said judgment. The plaintiff was informed of Hersee's judgment in October, soon after it was obtained. On 25th November, 1876, the plaintiff signed an agreement to compromise its debt against Fisher & Co., at twenty-five cents on the dollar, conditioned, however, that it was not to be binding till all the creditors assented to the same. At the time of signing said compromise, the plaintiff had an oral stipulation with Fisher & Co., for a preference. The conditions of the compromise were not fulfilled and the plaintiff received nothing under it. On 28th March, 1877, the plaintiff commenced suit against Fisher and Whiting on the contract for the purchase of the goods. Fisher and Whiting appeared in the action by attorney, but did not answer, and made default. On the eighteenth April, the plaintiff's attorney served notice of adjustment of costs, but no adjustment was had, and no judgment was docketed, and the suit remained in that condition until after this action was commenced. The defendant herein set up that action as a defense, claiming that the plaintiff had elected thereby to affirm the contract, and thereupon the plaintiff, on 26th September, 1879, obtained and entered an *ex parte* order at a Special Term of this court, that the said action be discontinued on payment of defendants' costs. On

the same day the plaintiff tendered to the attorney of Fisher and Whiting, ten dollars for their costs in said action, which he declined to accept.   On 14th May, 1877, the plaintiff commenced suit against Hersee, in which Fisher and Whiting were named as defendants, but the summons and complaint were served on Hersee alone, and he alone answered.  .The allegations in the complaint upon which issue was taken and a trial had, were, in substance, that the purchase of said goods was fraudulent and that Hersee participated in the fraud.   The action was tried before Mr. Justice BARKER without a jury, and judgment was rendered in favor of Hersee, which was affirmed in this court on appeal in June, 1879.   The action now before us was commenced 31st of July, 1879.   The referee before whom it was tried found, in substance, that the sale of said goods on credit was induced by representations made by Fisher respecting the means and liabilities of said firm, which were false to his knowledge ; that at that time Fisher & Co. were insolvent and unable to pay their debts, and knew themselves to be so, and that they ordered said property and obtained possession of the same without the expectation or intention of paying for it.   He found the facts of the indebtedness of said firm to Hersee, the suit brought and judgment recovered thereon, and the issuing of execution and the levy and purchase by Hersee, substantially as above stated.   He also found that at the time of the purchase Hersee advanced nothing for the goods, but took them in part payment of a precedent debt and was not a *bona fide* purchaser.   He found that before the commencement of said action the plaintiff demanded of the defendant possession of said goods and defendant refused to surrender them.   He also found the facts above stated in reference to the compromise and the two actions brought by the plaintiff; and he found that in the last of said actions Justice BARKER decided that the purchase by Fisher & Co. was fraudulent, but that Hersee was not a party to the fraud.   The referee also found as conclusions of law that by reason of the fraud so found no title to the property vested in Fisher & Co.; that as the defendant parted with no value for the goods, he acquired no better right to them than was possessed by Fisher & Co.; that defendant's, levy was a conversion ; that none of the subsequent acts of the plaintiff constituted a waiver of the cause of action herein, and that the. plaintiff is entitled to·

recover of the defendant the value of so much of said property as was levied on by him with interest.

The contention of the appellant's counsel that the finding of fraud on the part of Fisher & Co. is not supported by the evidence cannot be maintained. The testimony on the part of the plaintiff tending to prove the alleged false representations, although controverted, fully supports the findings upon that point. Independently of the false representations, the undisputed fact that Fisher & Co., knowing themselves to be largely insolvent, continued to receive the plaintiff's goods after Hersee had sued them, without disclosing the fact of such suit, is very strong evidence that they did not intend to pay for the goods when they ordered and received them. There was, therefore, ample proof of fraud aside from the findings of Justice BARKER in the suit tried before him; and the questions raised by the appellant's counsel as to those findings, and whether they were admissible in evidence, are immaterial. It may be remarked, however, that the question of their admissibility is put at rest by the stipulation appearing in the case, which provides that either party may read from the judgment-roll in the case of the present plaintiff against Hersee, impleaded with Fisher and Whiting, which was the case tried before Justice BARKER. The findings were incorporated in the judgment-roll, and properly so. (Code, § 1237.)

A more difficult question is whether the evidence shows that the plaintiff, with knowledge of the fraud, elected to affirm the contract of sale. That he was informed of Hersee's judgment a few days after it was docketed, and had full knowledge of the fraud as early as the following January, is clearly proved. The agreement to compromise was in November, 1876. Had the agreement been consummated, or had the plaintiff received anything under it, there would be no difficulty in holding that the plaintiff thereby waived its right to avoid the contract. But the agreement resulted in nothing. It bound no one. It was merely a consent on the part of the plaintiff to compromise on certain conditions that never were performed. We think it had not the effect to confine the plaintiff to its remedy upon the contract.

The action against Fisher and Whiting being upon the contract, would doubtless have been conclusive evidence of an election to

affirm the same, if it had proceeded to judgment, even if the judgment had been adverse to the plaintiff. (Per KENT, Ch., in *Sanger* v. *Wood*, 3 Johns. Ch., 416 ; citing 1 Sch. & Lef., 441 ; *Butler* v. *Miller*, 1 Comst., 496.) There are many cases where the fact of bringing suit to enforce one of two inconsistent remedies has been held an election, although the suit has not proceeded to judgment. One class of those cases is where the plaintiff has realized some benefit from the suit by means of a provisional remedy therein, or otherwise, as in *Morris* v. *Rexford* (18 N. Y., 552), where, in replevin, the plaintiff obtained a redelivery of his goods ; or in *Butler* v. *Hildreth* (5 Metc., 49), where the plaintiff secured his demand by an attachment of property. Another class consists of actions against a sheriff for a voluntary escape, where, by the fact of such suit being brought, the prisoner may leave the jail liberties with impunity, and the sheriff cannot purge the escape by a recaption without the authority of the plaintiff. Such are the cases of *Brown* v. *Littlefield* (1 Wend., 398) ; *Rawson* v. *Turner* (4 Johns., 469), and *McElroy* v. *Mancius* (13 id., 122), cited by the appellant's counsel. In those cases the change worked by the bringing of the suit in the *status* of the prisoner and the sheriff is held to conclude the plaintiff from adopting any other remedy. It is said in an instructive note to the case of *Smith* v. *Hodson* (4 T. R., 211), in Smith's Leading Cases (7th Am. ed., vol. 2, m. p. 198), that " whatever may be the rule in other cases, there can be no doubt that when the ground taken in a suit is prejudicial to the other side by cutting off from a good defense, or precluding a recovery on a valid cause of action, it will preclude the person who adopts it from shifting his ground subsequently to the injury of his opponent. * * * The principle applies wherever an attempt is made to gain an inequitable or unfair advantage by presenting the same matter in different and inconsistent aspects, * * * and furnishes the true explanation of most of the cases examined in this note."

But, with the exception of the two classes of cases above mentioned, we are not aware of any decision holding that in the case of a fraudulent purchase, the commencement of a suit upon the contract concludes the plaintiff from rescinding the contract and reclaiming the goods, where the action on the contract has been regularly and seasonably discontinued, before judgment. There

are numerous cases in which expressions may be found to the effect that the bringing of a suit on the contract is a conclusive election of remedies, but with the exceptions above stated, those cases, so far as we have observed, refer to a suit not discontinued and existing in full force. A suit on the contract begun one day and discontinued the next, could not, with reason, be deemed a conclusive election of remedies; and there is no substantial difference between such a case and the one now under consideration, unless it be found in the fact that here the prior suit was not discontinued until after it was pleaded in the present action. In the case of two successive suits on one and the same cause of action, a discontinuance of the first action after it is pleaded in the second, is permissible, and such discontinuance will be a good reply to the plea. (*Beals* v. *Cameron*, 3 How. Pr. R., 414; *Averill* v. *Patterson*, 10 N. Y., 500.) Or it may be given in evidence in answer to the matter pleaded, where a reply is not permitted or required.

What reason is there for not applying the same rule to the present case? Upon the assumption that the purchase was fraudulent and that the defendant took the property from the possession of the fraudulent vendees without paying value for it, to hold that the prior action, although abandoned and regularly discontinued, is a bar to a recovery, would be interposing a mere technicality to shield the defendant from a just liability. The plaintiffs gained nothing by their former suit, and neither the defendants in that suit, nor the defendant in this, lost anything by it. There is nothing in the case constituting an equitable estoppel, and the present *status* of the defendant is the same as if the prior suit had not been instituted.

In *Peters* v. *Ballistier* (3 Pick., 495) the master of a vessel had exceeded the authority which had been given him to sell the cargo, by disposing of it in payment of an antecedent debt due by the owner to the vendee. An action of assumpsit was subsequently brought against the latter by a party claiming as assignee of the bill of lading, which was discontinued and an action of trover resorted to in its stead. It was held that as the action of assumpsit had not been proceeded with, but had been discontinued, it did not debar the plaintiff from maintaining the action for conversion.

It was said in the subsequent case of *Butler* v. *Hildreth* (*supra*) that the decision in the case of Peters proceeded on the ground that the

action of assumpsit, brought in the first instance, had been misconceived, and could not have been sustained. But, as was suggested by the author of the note to *Smith* v. *Hodson*, in Smith's Leading Cases, above referred to, the plaintiff's mistake in bringing assumpsit, lay in forgetting that by so doing he necessarily entitled the defendant to insist upon the contract as binding in his favor, as well as against him, and to show that all which it bound him to do had been performed.

We think it will be found on examination that there is no adjudication in this State antagonistic to the idea that the doctrine of a conclusive election of one of several remedies by personal action, rests upon an equitable estoppel. That the two classes of cases already referred to herein rest upon that basis is clear. In *Goss* v. *Mather* (2 Lans., 283; S. C., aff'd, 46 N. Y., 689), the plaintiff recovered judgment in his first action and collected it in part. In *Rodermund* v. *Clark* (46 id., 354), a party whose half interest in a vessel was sold against his will, retained possession of the vessel after the sale, and it was held that he could not sue for a conversion. FOLGER, J., delivering the opinion of the court, cited *Sanger* v. *Wood* (3 Johns. Ch., 416) and *Littlefield* v. *Brown* (*supra*). In the first of those cases the party had proceeded to judgment; the second was, as we have seen, an action against a sheriff for an escape. In *Nichols* v. *Smith* (42 Barb., 381) the plaintiff had prosecuted his foreclosure suit to judgment. In *Bank of Beloit* v. *Beale* (34 N. Y., 473) the plaintiff had prosecuted his action, in which he affirmed the act of his agent, and stress was laid upon that fact. DAVIES, Ch. J., cited *Lloyd* v. *Brewster* (4 Paige, 537), in which the like fact existed, and was made the basis of the decision, and. LEONARD, J., cited the case of *Morris* v. *Rexford* (*supra*), where the plaintiff had replevied his goods. In *Wright* v. *Ritterman* (4 Robt., 704; S. C., 1 Abb. Pr. [N. S.], 428) it was held by the Superior Court of the city of New York that the pendency of an action on contract for goods sold and delivered will not prevent the bringing of an action for the conversion of the same goods; that the plaintiff may have two remedies in such a case, and an adjudication in an action brought to obtain either, whether for or against him, may be a bar to the other; but at any time previous to such an adjudication, he may discontinue the first action and proceed with the second.

The appellant's counsel cites *Kinney* v. *Kiernan* (49 N. Y., 164); *Moller* v. *Tuska* (87 id., 166), and *Powers* v. *Benedict* (88 id., 605). The pith of the decision in each of those cases is, that after a contract of sale has been rightfully rescinded by the vendor on account of fraud on the part of the vendee, the contract is at an end, and no act on the part of the vendor alone can revive it. And in each of the last two cases cited it was held that the commencement of an action to recover the possession of the property, which had been prosecuted to the very judgment which the court then had under review was such a rescission. Those cases, in view of their facts, are in harmony with the position of the respondent in the case before us. Some expressions in the opinion delivered in Moller's case, if detached from the context, might seem to intimate that the bare commencement of the action was a conclusive election. But keeping in mind the authorities there cited, as well as the facts of the case, no such conclusion can be drawn. Among the authorities cited is the remark of Comyn, that if a man once determine his election it shall be determined forever (Dig. Elect. C., 2) and the last line of the maxim found in Coke upon Littleton :

> " *Electio semel facta et placitum testatum non patitur regressum,*
> *Quod semel placuit in electionibus amplius displicere non potest.*"
> [Coke Litt., 146 *a.*]

The authors from whom those quotations are made, were speaking of an election between a remedy by real action and a remedy by personal action. " If," said Littleton, " a man grant by his deed a rent charge to another, and the rent is behind, the grantee may choose whether he will sue a writ of annuity for this against the grantor, or distrain for the rent behind. But he cannot do or have both together, for if he recovered by writ of annuity, then the land is discharged of the distress, and if he doth not sue a writ of annuity, but distrain for the arrearages, and the tenant sueth his replevin, and then the grantee avow his taking of the distress in the land, in a court of record, then is the land charged and the person of the grantor discharged of the action of annuity." (Sec. 219.) " Here it appeared," says Coke in his note thereon, " that an avowry in a court of record, which is in the nature of an action, is a determination of his election before any judgment given." And then he quotes the maxim above cited. " But," he continues, " here is a

diversity to be observed between the case aforesaid of the grant of the rent when he (as has been said) may make it either real or personal, and when a man may have election to have several remedies for a thing that is merely personal or merely real from the beginning. As if a man may have an action of account or an action of debt at his pleasure, and he bringeth an action of account and appear to it, and after his nonsuit, yet may he have an action of debt afterwards, because both actions charge the person. The like law is of an assize and a writ of entry in the nature of an assize, and the like."

Comyn lays down the same doctrine, " but," says he, " where an election is of several remedies, if he chose one he may afterwards have the other in personal cases, as when he has election of several actions." (Dig. Election, 541, citing Co. Lit., 146 *a*.)

As these authorities were referred to by the learned judge who delivered the opinion in Moller's case, and also in that of Powers, it is not reasonable to suppose that those cases were intended to assert a different rule. *Morris* v. *Rexford* (*supra*) is also cited in Moller's case.

There is a class of cases kindred to the one in hand where an agent having purchased goods for an undisclosed principal by whom they were used, the vendor has his election to sue the principal or the agent. In *Priestly* v. *Fernie* (3 Hurls. & Colt., 977 ; 34 L. J. [N. S.], Exch., 172) it was held that whilst a judgment against principal or agent, even without satisfaction, would constitute a conclusive election, yet that no legal proceeding short of a judgment would have that effect. (See, also, *Curtis* v. *Williamson*, 11 Eng. R. [Moak's Notes], 149 ; *Mattlage* v. *Poole*, 15 Hun, 556 ; *Nason* v. *Cockroft*, 3 Duer, 366.)

It seems reasonable that where a person has two or more inconsistent remedies, the bare fact of his suing upon one without thereby improving his own condition or injuriously affecting that of the defendant therein, or of any other party (if he discontinues such suit before judgment), and without securing any advantage by his suit, should not prevent his resorting to any other remedy to which he was originally entitled. For these reasons we are of the opinion that the bringing of the suit of March, 1877, was not a ratification of the contract which precludes the plaintiff from maintaining the

present action, that suit not having been prosecuted to judgment and having been seasonably and regularly discontinued.

The suit of May, 1877, was not an affirmance of the contract, inasmuch as it alleged the fraud as the ground of the relief sought. It is to be observed that the suit begun in March was not set up as a defense in that action, although it was as available for that purpose in that action as in this.

The only other ground of affirmance of the contract urged in behalf of the appellant is the delay in bringing this action. But the delay is satisfactorily accounted for by the pendency of the action of May, 1877, which was not finally determined till June, 1879. This action was begun in July following.

The appellant contends that there is no evidence of a conversion. The defendant caused the property to be taken forcibly from the possession of the fraudulent vendees, by issuing an execution against their property and subsequently ratifying and approving of the levy made on the particular goods in question. Having thus wrested the goods from the possession of the plaintiff's fraudulent vendees, his position differs from that of a *bona fide* purchaser acquiring possession *by voluntary delivery.* Had the fraudulent vendees been mere bailees of the property, the taking by the defendant would have made him liable to the owner as a trespasser; otherwise, if they had delivered the property to him. (Vin. Abr. Trespass, M. pl., 11 ; *Marshall* v. *Davis,* 1 Wend., 109, 114 ; *Nash* v. *Mosher,* 19 id., 431, 435 ; *Ely* v. *Ehle,* 3 Comst., 506.) The cases cited put the right to the action on the non-consent of the bailee. (See, also, *Acker* v. *Campbell,* 23 Wend., 372.) In the present case, whatever title the fraudulent vendees had was defeasible and voidable at the election of the plaintiff, and the defendant having taken the property from their possession, by force, there is much reason for saying that he is in no better position than the fraudulent vendees, and that he is liable to the plaintiff, as a trespasser, on its electing to avoid the contract of sale. And upon that ground the referee held that the levy was a conversion.

But it is not necessary to rest the case on that ground, for the referee found a demand and refusal, and those facts are enough to establish a conversion if the forcible taking is not sufficient. It is contended by the appellant that the demand was faulty, because it

was not accompanied by a notice of the defect in the defendant's title. The cases cited by the appellant's counsel do not support his contention in that respect. They are *Gillet* v. *Roberts* (57 N. Y., 28), *Matteawan Company* v. *Bentley* (13 Barb., 641), *Stevens* v. *Hyde* (32 id., 171), and *Bliss* v. *Cottle* (Id., 322). In *Gillet* v. *Roberts* the defendant was a purchaser in good faith, he having agreed to pay value, and the property was delivered to him by his vendor. It was in respect to such a case that Judge EARL made the remark cited by the appellant's counsel, that "the rule is a reasonable and just one, that an innocent purchaser of personal property from a wrong-doer shall first be informed of the defect in his title, and have an opportunity to deliver the property to the true owner, before he shall be made liable as a tort feasor for a wrongful conversion." Pertinent as the remark was to the facts of that case, it was not necessary to the decision. The learned judge had shown that the defendant had done no act that amounted to a conversion, and that all that was relied upon by the plaintiff, as establishing a conversion, was certain language of the defendant which had not that effect. The case of the *Matteawan Company* does not bear upon the point. In *Stevens* v. *Hyde* and *Bliss* v. *Cottle*, the action was against a general assignee of the fraudulent vendee for the benefit of creditors. In the first case, the only evidence of a conversion was that on a simple demand, accompanied by an offer to return certain money and notes received from the purchaser, the defendant refused to give up the property. There was no notice of an assertion by the plaintiff that the purchase was fraudulent, and that on that ground he elected to rescind. The plaintiff having been nonsuited on the ground that the tender should have been made to the vendee and not to his assignee, that position was repudiated by the General Term, but the nonsuit was affirmed and a new trial denied, on the sole ground that the plaintiff had not kept the tender good and had refused to produce the notes at the trial. But it was not said that the demand was insufficient. In *Bliss* v. *Cottle* the demand was made by an agent, but as he was not shown to have been authorized by the plaintiff to make the demand, it was held insufficient on that ground. It may be conceded, however, that in each of those cases the rule suggested would properly apply, the defendant in each case having purchased the property in good faith

from the wrong-doer and received it from him by delivery. But, as we have seen, those facts do not exist in this case, and we think the rule contended for does not apply.

·*White* v. *Dodds* (42 Barb., 554) was an action against the general assignee of a fraudulent vendee for the benefit of his creditors, to recover the possession of the goods fraudulently purchased. The cases of *Bliss* v. *Cottle* and *Stevens* v. *Hyde*, were commented on, and it was held that the possession of the assignee, being peacefully and innocently acquired from the apparent owner, may be regarded as so far lawful that a demand should be made of him to deliver it up before he can be subjected to an action; but a majority of the court held that the vendor, claiming the goods·as the true owner, is not bound to disclose the source or the particulars of his title. And where a demand of the property is made of the assignee, in whose possession the same is, it is not necessary to accompany or precede the demand by a declaration or disaffirmance of the contract, and a statement that such disaffirmance is on the ground of fraud perpetrated by the assignor in making the original purchase. The position of the defendant in this case is certainly no better in this respect than that of a general assignee of the fraudulent vendee for the benefit of creditors.

Again, it is contended that the evidence fails to establish a conversion, for the reason that it shows that the defendant was unable to comply with the demand. This contention rests upon the testimony of the plaintiff's witness, that he demanded the goods on behalf of the Co-operative Foundry Company, and that the defendant said that he had no goods of the Co-operative Foundry Company. This, it is said, is evidence that he had not the goods in question. We understand it, on the contrary, to be a denial of the title of the company to the goods. That the goods in question were taken by the defendant into his own possession is undisputed. There is no evidence that he had parted with them. In the cases cited by the appellant's counsel upon this point there was either no evidence that the goods had ever been in the defendant's possession, or there was affirmative evidence tending to show that they were not in his possession·at the time of the demand.

In our examination of this case it has been suggested by one member of the court that the demand was excessive, it having been

made for all the property sold by the plaintiff to Fisher & Co., whereas the referee has found that a part of the goods were sold by Fisher & Co. to other parties, and never came to the possession of the defendant.    To this there are several answers.    (1.) The defendant did not put his refusal to comply with the demand on that ground, but he denied the plaintiff's right to any part of the goods.    (2.) The suggestion that the demand was excessive was not made at the trial; if it had been made, the objection might have been obviated by proof of a demand limited to the plaintiff's goods in defendant's possession.    Under these circumstances the objection was waived and cannot be raised for the first time on appeal.    This view of the matter works no injustice to the defendant, as the recovery is only for the value of the goods which were in his possession.

It is contended by the appellant's counsel that the referee erred in holding that by reason of the fraud of Fisher & Co. they acquired no title to the goods.    The finding may not be strictly accurate, some of the cases holding that where the goods are delivered to the fraudulent vendee, in pursuance of the contract of sale, he acquires a title to them, subject to being avoided, at the election of the vendor.    And that is probably the true doctrine.    (*Stevens* v. *Hyde*, 32 Barb., 171, and cases cited.)    But the error was harmless, for if the views we have already expressed are correct the sale was avoided by the vendor; and all the cases are agreed that where that is done neither the fraudulent vendee nor a *mala fide* purchaser from him has any title whatever.    (*Wheaton* v. *Baker*, 14 Barb., 594; *Stevens* v. *Hyde*, *supra*.)    There are no other questions in the case requiring discussion.

The judgment should be affirmed.

HARDIN, J., concurred.

BARKER, J. (dissenting):

The contract of sale was fully executed by delivery of the property.    It was the intention of both the vendor and vendees that on delivery of the property the title thereto should pass to the latter.    Such was the legal effect of the contract of bargain and sale, subject, however, to the right of the seller to rescind the contract and reclaim the property because of the fraudulent misrepresenta-

tions of the buyers. But so long as the plaintiff did nothing in disaffirmance of the sale the legal title remained in Fisher & Co., or those who claimed under them.

The rule as stated is intended to protect innocent parties who may in good faith deal with fraudulent purchasers concerning the property. The authorities are in harmony with these views. Suppose after the goods were received by Fisher & Co. at their store in Buffalo a customer of theirs, without any notice of the fraud, had purchased one of the stoves in good faith and paid for it, who can doubt but that he would have acquired a perfect title as against the plaintiff. (*Saltus* v. *Everett*, 20 Wend., 279; *Mowrey* v. *Walsh*, 8 Cow., 238; *Stevens* v. *Hyde*, 32 Barb., 171; *Rowley* v. *Bigelow*, 12 *Pick.*, 306; *Nichols* v. *Michael*, 23 N. Y., 264.) In this case it is not to be claimed that the defendant was a purchaser for value so as to acquire a perfect title as against the plaintiff, as his bid for the property at the sheriff's sale was not paid in cash, but was applied on a pre-existing debt which he had against Fisher & Co. represented in the judgment.

The defendant's position is this, that as against Fisher & Co. the sale was voidable at the instance of the plaintiff, and until it elected to rescind the same, parties dealing with Fisher & Co. concerning the property, and acting in good faith and ignorant of the fraud, cannot be charged as tort feasors by the mere act of purchase. That as the levy and sale was prior to any attempt by the plaintiff to avoid the sale and reclaim the property, his purchase of the property was not wrongful and did not in law amount to a conversion, and that his possession was lawful until he had notice of the fraud, and that the plaintiff repudiated the sale on the ground of fraud and demanded from him a return of the property.

There is no ground for saying that the defendant participated in the fraud, or that he had any knowledge of it prior to his purchase; therefore, he could not be charged as a wrong-doer and be held guilty of a conversion, until after a proper demand. This the plaintiff failed to make before suit brought.

The referee finds, as a fact, that before the commencement of this action the plaintiff demanded possession of said goods, and the defendant refused to surrender the same or any part thereof.

This finding, if supported by the evidence, amounts to a conver-

sion. But, in my opinion, the evidence does not support a conclusion so broad and unqualified as the same is expressed in the finding. The demand, such as it was, did not take place until more than two years after the sale. There is no proof where the property then was, nor that the defendant had sold or transferred the same. The only item of evidence on the subject is found in the testimony of one witness, the plaintiff's agent, who says that he called on the defendant at his office in Buffalo, at the corner of Main and Chippewa streets, and showed him an itemized bill of the goods which Fisher & Co. had previously purchased, and then in the words of the witness, "I demanded the goods represented on the bill on behalf of the Co-operative Foundry Company. He said he had no goods from the Co-operative Foundry Company; nothing else; I left the bill of the goods with him." From other portions of the evidence, it appears that the goods mentioned in the bill embraced all the goods sold to Fisher & Co., after the fraudulent representations were made. Of such goods many parcels had been sold by Fisher & Co., before the levy, in value amounting to $400. The goods purchased by the defendant at the sale included a large amount of property which the plaintiff never owned, and which had become a part of the stock and goods sold by the sheriff, and bought by the defendant in one lot, on a single bid, in amount $4,755.48.

The defendant was not notified that the plaintiff repudiated the sale, nor why a demand was made upon him for the goods. He was not given a suitable opportunity to comply with the same, it was insufficient because it was excessive. An innocent purchaser of property at a sheriff's sale cannot be so easily made a wrong-doer and treated as a tort feasor. The law is not so severe and unjust. The defendant did not put forth any claim of title to the property at the time the demand was made. In his reply to the demand he stated the truth "that he had no goods from the plaintiff." Where mere words are relied upon to prove a conversion, they must be uttered under such circumstances in proximity to the property as to show a defiance of the owner's rights, a determination to exercise dominion and control over the property, and to exclude the owner from the exercise of his rights. The remarks of the court in *Gillet* v. *Roberts* (57 N. Y., 28), relative to the subject of conversion by an

innocent purchaser, are applicable to this case, viz.: " The rule is a reasonable and just one, that an innocent purchaser of personal property from a wrong-doer, shall first be informed of the defect of his title, and have an opportunity to deliver the property to the true owner before he shall be made liable as a *tort feasor* for a wrongful conversion."

The case of *Pease* v. *Smith* (61 N. Y., 475) holds nothing to the contrary. There the purchase was at a private sale, from a wrong-doer who had no title, nor pretense of title, and besides the defendant had, after his purchase, sold the property, and this act of ownership, together with the other fact, it was held amounted to a conversion. (See, also, *Rawley* v. *Brown* 18 Hun, 456; *Storm* v. *Livingston*, 6 Johns., 44.)

The plaintiff elected to stand by the sale, when it commenced its suit against Fisher & Co., for the purchase-price of the goods. Such election had the effect to confirm the defendant's title to the property. At that time the plaintiff was fully informed of the fraud which had been perpetrated upon it. In the face of such knowledge they made an election to stand by the contract of sale, from which they cannot recede. That action was still pending when this was commenced. (*Moller* v. *Tuska*, 87 N. Y., 166; *Morris* v. *Rexford*, 18 id., 552.)

This rule, so long established in this State, is the same in Massachusetts, and was applied in *Ormsby* v. *Dearborn* (116 Mass., 386), *Seavey* v. *Potter* (121 id., 297).

I am for reversing the judgment.

Judgment affirmed.